FALFURRIAS IMMIGRATION COMPANY ET AL. V. G. R. SPIELHAGEN.

Decided May 12, 1910.

**1.—Corporation—Mismanagement—Minority Stockholder—Receivership.**

A minority stockholder has the right to maintain a suit in behalf of the corporation against its defaulting officers and directors to recover funds and property of the corporation fraudulently appropriated by them, and for the redress of other fraudulent and ultra vires acts, and in a suit of this kind a court of equity has the inherent power to displace the management of guilty or negligent officials by the instrumentality of a receiver, but it must appear that such course is necessary for the preservation of the property and for the protection of the rights of the minority stockholder.

**2.—Same—Directors—Antagonistic Interests.**

It is impossible for the business of rival and competing firms or corporations to be managed by the same officers without injury to one or the other concern, and the concern whose interests are jeopardized by the hostile management may have the management displaced by the appointment of a receiver.

**3.—Same—Receivership.**

The appointment of a receiver for a corporation does not necessarily

result in the dissolution of the corporation, therefore the objection that the facts alleged in an application for the appointment of a receiver for a corporation are not sufficient to authorize the court to dissolve the corporation, is not a conclusive reason why the application should not be granted.

**4.—Same—Appeal to Directors—Remedy.**

When the directors of a corporation have adverse interests and are so intentionally managing the corporation as to wreck it, it is not necessary that a stockholder should apply first to the board of directors for a correction of their management before applying to the courts for the appointment of a receiver.

### ON MOTION FOR REHEARING.

**5.—Pleading—Appointment of Receiver—Practice.**

When the petition sworn to by plaintiff in a proceeding for the appointment of a receiver is the only evidence of the truth of the facts alleged to obtain the appointment, and it is met by a denial of those facts in the answer sworn to by defendant, the appointment should be refused unless the plaintiff supports the controverted averments by additional affidavits.; and, under our practice, if the answer and controverting affidavits are not sufficiently full and definite, exceptions to the same should be urged by the plaintiff and acted on by the court so as to give the defendant an opportunity for amendment, before final action by the court. It is error for the court to overrule exceptions to the answer on the ground that it is not sufficiently full, definite and specific, and then grant the application for the appointment of the receiver because the averments of the petition are not specifically denied.

Appeal from an interlocutory order of the District Judge of the Twenty-eighth Judicial District, Nueces County, Texas. Tried below before Hon. W. B. Hopkins.

*G. R. Scott & Pope, Kleberg & Neethe* and *I. Lovenberg, Jr.,* for appellants.—A receiver of a corporation should not be appointed except on a clear showing that the applicant's rights imperatively demand it, and that he has no other adequate remedy and is in danger of suffering irreparable loss. People's Investment Co. v. Crawford, 45 S. W., 738; Cahn v. Johnson, 12 Texas Civ. App., 304; City Natl. Bank of Dallas v. Dunham, 18 Texas Civ. App., 184; Farwell v. Babcock, 27 Texas Civ. App., 162; New Birmingham Iron & Land Co. v. Blevens, 12 Texas Civ. App., 410; 20 Am. & Eng. Ency. Law, 18-21; First Natl. Bank of Sioux City v. Gage, 19 Ill., 207; Weatherly v. Capitol City Water Co., 22 So., 142; Darragh v. Wetter Mfg. Co., 78 Fed., 15, 16.

Equity has no power to appoint a receiver for a corporation at the suit of a stockholder for fraud, mismanagement or collusion on the part of the corporate authorities, or *ultra vires* acts of its directors or the corporation itself, but will limit the redress granted to the specific wrongs charged, and enjoin and forbid the misconduct complained of. People's Investment Co. v. Crawford, 45 S. W., 738; New Birmingham I. & L. Co. v. Blevens, 12 Texas Civ. App., 410; French v. Gifford, 30 Iowa, 167; United Electric Sec. Co. v. Louisiana Elec. L. Co., 68 Fed., 675; Empire Hotel Co. v. Storage Co., 49 N. J. Eq., 403; Parsons v. Monroe Mfg. Co., 4 N. J. Eq., 206.

A stockholder of a corporation, having no lien upon its property,

is not entitled to have a receiver appointed for the better security of his debt, although there may be manifest danger that the property will be lost or disposed of before he can obtain relief as against said property. Same authorities.

Rev. Stats. 1895, art. 1465. authorizing the appointment of a receiver when a corporation is insolvent, or in imminent danger thereof, does not make these grounds sufficient cause of action for which a stockholder may have a receiver appointed, but he must allege a cause of action in addition to these grounds, showing that his interest requires the appointment to be made. People's Investment Co. v. Crawford, 45 S. W., 738; Espuela Land & Cattle Co. v. Bindle, 5 Texas Civ. App., 18; New Birmingham Iron & Land Co. v. Blevens, 12 Texas Civ. App., 410; French Bank Case, 53 Cal., 553; 20 Am. & Eng. Ency. Law, 17.

Unless a power is conferred by statute, equity has no power to wind up the affairs of a corporation by the appointment of a receiver at the suit of a stockholder failing to show a cause of action against the corporation which would entitle him to the appointment as an ancillary remedy independently of any right he may have thereto as a stockholder. People's Investment Co. v. Crawford, 45 S. W., 738; Espuela Land & Cattle Co. v. Bindle, 5 Texas Civ. App., 18; Farwell v. Babcock, 27 Texas Civ. App., 162; New Birmingham Iron & Land Co. v. Blevens, 12 Texas Civ. App., 410.

Where the allegations in a minority stockholder's application for the appointment of a receiver clearly show that the corporation is not insolvent or in imminent danger of insolvency, but is a going concern entitled to many large funds which have been (by applicant's allegations) diverted, the court of equity will not appoint a receiver of the corporation and assume control and management of its affairs when it is clearly manifest that there is no tangible property to receive and no acts or things to be done by the receiver, except the filing of suit to recover the alleged diverted funds, since such minority stockholder under such circumstances could act as effectively and obtain the same relief without the aid of a receiver. People's Investment Co. v. Crawford, 45 S. W., 838; Cahn v. Johnson, 12 Texas Civ. App., 304; City Natl. Bank of Dallas v. Dunham, 18 Texas Civ. App., 184; New Birmingham Iron & Land Co. v. Blevens, 12 Texas Civ. App., 410; 20 Am. & Eng. Ency. Law, 18-21; First Natl. Bank of Sioux City v. Gage, 79 Ill., 207; Weatherly v. Capitol City Water Co., 22 So., 142; Darragh v. Wetter Mfg. Co., 78 Fed., 15-16.

In an action against a corporation by a stockholder, brought in his own name and to protect or enforce his rights and interests as a stockholder, equity will not interfere by the appointment of a receiver, unless it be shown that plaintiff has exhausted all the means within his reach to obtain, within the corporation itself, a redress of his grievances at the hands of the directors and shareholders. New Birmingham Iron & Land Co. v. Blevens, 12 Texas Civ. App., 410.

The court in this cause, in passing on the application for the appointment of a receiver, should have taken into consideration the an-

swer of the defendants, and found according to the preponderance of evidence.

The trial judge held, over the objections of the plaintiff, that the sworn answers of the defendants fully met and denied in every material part the equities of plaintiff's bill. The plaintiff offered no evidence whatever to support the allegations of his bill, or to overcome the denials of the defendant's answers. Therefore the trial judge erred in appointing a receiver.

The trial judge held, over the objections of the plaintiff, that the answers of the defendants were responsive, certain and definite, and that said answers denied the equities of plaintiff's bill in every material part. The plaintiff has not appealed from that holding, and therefore this court erred in its conclusion of law that "the appointment of a receiver in this case can be sustained on the ground that the denials to some of the material allegations of the petition are not sufficiently definite."

*Jas. B. Wells* and *F. W. Seabury,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This appeal is from an order of the district judge of the Twenty-eighth Judicial District, made in chambers, appointing a receiver for the defendant corporation at the suit of the appellee.

The suit is against the Falfurrias Immigration Company, a private corporation having its principal office and place of business in the town of Falfurrias, in Starr County, Texas, and against Garland B. Miller, Richard G. Miller, Robert G. Miller, Lawrence D. Miller, W. A. Gardner, B. T. Henry, Miller Brothers' Company (a partnership composed of the said Garland B. Miller, Richard G. Miller, Robert G. Miller and Lawrence D. Miller), and against the said Garland B. Miller, doing business as "Garland B. Miller, Investor's Agent," as defendants; the said Garland B. Miller being also president, the said Richard G. Miller being also the vice-president and general manager, and the said W. A. Gardner being also secretary and treasurer of said corporation, and the said three officers, together with Robert G. Miller and B. T. Henry, constituting the board of directors of said corporation; and therein the said plaintiff, as a minority stockholder of the said corporation, but the largest individual stockholder thereof, sues for the benefit of said corporation, and seeks to recover by it certain moneys and property of said corporation fraudulently appropriated by defendants, and for damages to said corporation resulting from the fraudulent acts of its said officers and directors, and for an accounting by them for moneys and property of said corporation received by them, and for general relief and the winding up of said corporation, and, under appropriate allegations, prays for the appointment forthwith of a receiver therefor.

The original petition, in so far as it asks for the appointment of a receiver, was set down for hearing in chambers before the said district judge, and due notice of such hearing was given to all of the defendants, and thereafter all of the defendants entered their personal appearance, and answered the said petition, in so far only as the same

applies to the appointment of such receiver, by their verified answers filed on August 17, 1908.

On November 7, 1908, the said judge, sitting in chambers, overruled the general demurrer and special exceptions contained in the defendants' answer, to which action defendants excepted; and on the same day also overruled the general demurrer and special exceptions contained in the plaintiff's first supplemental petition, to which action the plaintiff also excepted.

On the same day, to wit, November 7, 1908, the plaintiff's application for the appointment of a receiver was heard by the said judge in chambers on the aforesaid sworn pleadings of the parties to this suit without other evidence being introduced by either party, and thereupon the said judge rendered and caused to be entered his aforesaid interlocutory order appointing such receiver, fixing his bond, and fixing also the amount of the supersedeas bond to be filed by the defendants on their appeal therefrom.

After alleging the organization of the defendant corporation with a capital stock of $5,000, divided into 100 shares of the par value of $50, which stock is owned by plaintiff and defendants in the following proportions: G. R. Spielhagen, 33 shares; Garland B. Miller, 28 shares; Richard G. Miller, 27 shares; Robert G. Miller, 10 shares; W. A. Gardner, 1 share, and B. T. Henry, 1 share; the petition contains in substance the following allegations:

The said corporation ever since its organization has been engaged in the promotion of immigration and in a general real estate business at the said town of Falfurrias and in that vicinity, including the buying and selling of lands on commission or other character of profit.

The business of said corporation was very large and profitable up to May 1, 1907, and during that period the gross income of said corporation was more than $40,000, and the corporation had secured a large number of contracts for the purchase and sale of lands on commission or other character of profit, of the value to said company of not less than $100,000, which sum would have been received by it in the proper course and conduct of its business. The said corporation had also 100 branch officers and agencies scattered throughout the United States, and had expended more than $30,000 in an advertising campaign throughout the country (including the printing and distribution of 7,000 maps, 40,000 circular letters, and 250,000 pieces of illustrated literature, and advertising in 1,800 newspapers), whereby it had secured the profits and business aforesaid, and had also acquired a mailing list of more than 20,000 persons, including more than 1,000 prospective investors in land through it. Said company had also acquired a full equipment for taking care of and entertaining at Falfurrias prospective purchasers and settlers that it might bring there. By reason of this large and profitable business its shares were worth not less than $500 each.

The first board of directors consisted of Garland B. Miller, Richard G. Miller, Robert G. Miller, B. T. Henry and G. R. Spielhagen, and said Garland B. Miller was president, and Spielhagen was vice-president and said Richard G. Miller was secretary and treasurer of said corporation.

On or about May 1, 1907, the said Garland B. Miller, Richard G. Miller, Robert G. Miller and W. A. Gardner entered into a conspiracy among themselves, and with Lawrence D. Miller, a brother of the said three Millers, to injure the said Spielhagen and the said corporation, by appropriating the business, good will, property, contracts, commissions and profits of the said company, and to render valueless the said stock of said company, and, in effect, to end its existence. In carrying out said conspiracy, said Spielhagen was denied his right of examining the books and papers of the corporation; the files and papers of his office were seized and kept from him, and he was, on June 15, 1907, without cause, summarily removed from office as vice-president, and on August 1, 1907, was, at the annual stockholders' meeting then held, dropped from the board of directors, and said W. A. Gardner was elected as director in his stead, the other directors being re-elected, and the new officers being Garland B. Miller, as president, Richard G. Miller as vice-president and general manager, and W. A. Gardner as secretary and treasurer of said company, which places, as directors and officers respectively, they will hold. These acts were done for the purpose of carrying said conspiracy into effect and of concealing their transactions in regard to the same from appellee.

In furtherance of said conspiracy said Garland B. Miller, on or about May 1, 1907, set himself up in business at Falfurrias as "Garland B. Miller, Investor's Agent," in the same lines and character of business as those of the corporation, and as a rival and competitor thereof, and in direct conflict with its interests. On or about June 15, 1907, the said four Miller brothers organized the firm known as the Miller Brothers Company, and have ever since been engaged, at said town of Falfurrias, in the same lines and character of business as those of the corporation and in competition, rivalry and conflict therewith. The said parties, having free access to the books, papers, contracts, correspondence and lists of purchasers of the said corporation and sales contracts thereof, have, ever since May 1, 1907, used the knowledge and information so acquired for the promotion and benefit of their private business as such Investor's Agent and Miller Brothers' Company in competition with the said corporation, and to its damage and loss. They have also continuously used the office furniture and appliances, the equipment, camping outfit and teams, and the stenographers and agents of the said corporation, in the conduct of their private business; have answered the inquiries from intending purchasers of lands in their own names, and have taken to themselves the benefit of the business that resulted therefrom.; they have failed to follow up, for the benefit of the corporation, its former correspondence, and to close its pending trades and sales; they have wilfully permitted and caused sales contracts belonging to said company to become forfeited in order to secure, and they did secure, the same for themselves; they have failed to sell lands listed with said corporation for sale, and instead thereof have induced intending purchasers of the corporation to purchase lands listed with themselves individually; they have wrongfully appropriated, without accounting therefor, commissions and profits due the said corporation on sales of lands listed

with it; they have, without security, loaned moneys of said corporation to themselves and their relatives; they have illegally borrowed money, mortgaged the personal property of the corporation, and used its funds in the payment of debts and expenses not legally chargeable against it; and finally, about January 1, 1908, they abandoned the offices of said corporation and removed its furniture, records and files to another office at Falfurrias occupied jointly by the said Garland B. Miller, "Investor's Agent," and by the said "Miller Brothers' Company," taking down the signs of said corporation and not putting them up at the new office, which office is decorated and advertised by the signs of said Garland B. Miller, "Investor's Agent," and said "Miller Brothers' Company," and thereby they have induced and are still inducing persons having business with said corporation to believe that it was no longer engaged in such business, and to place their business in the hands of them individually, as such Garland B. Miller, "Investor's Agent," and "Miller Brothers' Company;" and that, by the acts aforesaid, they have destroyed the business of said corporation, brought it to the verge of bankruptcy, appropriated its assets and business, and caused its stock to be of little or no value.

Among other specific allegations of fraud and misappropriation of funds of the corporation, the following charges are made:

"1. That on March 31, 1907, the corporation entered into a contract in writing with John H. Houghton and others as the owners of a tract of 43,275 16/100 acres of land, more or less, in Nueces and Duval Counties, Texas, known as the Seeligson or Galveston Ranch, for the sale of said ranch upon a commission; that the corporation secured a purchaser for said land, to wit, one R. P. Haldeman; and that a sale thereof to said purchaser was made through the agency and efforts of said corporation, and that the corporation became entitled to the commissions under said contract, amounting to seventy-five cents per acre, and aggregating about $33,000. That installments of said commission amounting to $7,500 have been collected and received by said Garland B. Miller, and that he is collecting and receiving the remainder thereof as the same become due. That said Garland B. Miller has never paid over said moneys or any part thereof to the corporation or accounted for the same, but has received and appropriated the same to his own use and benefit, and is so receiving and appropriating the remaining installments as they are respectively paid, to the damage of said corporation $33,000.

"2. That on March 31, 1907, the said corporation entered into a contract in writing with said R. P. Haldeman for the resale of 6,300 acres out of the same land, upon a commission aggregating about $15,000. That said Garland B. Miller and Miller Brothers' Company have ever since been and are now selling said land, and have appropriated and are appropriating to their own use and benefit the commissions received thereon under the said contract so belonging to said corporation, and have never paid same to the corporation or accounted therefor, and to its damage $15,000.

"3. That on August 1, 1906, the said corporation made a verbal contract with Dr. Alex. A. Sharp for the exclusive re-sale of a tract of 2,000 acres of land belonging to him in Nueces County, Texas,

upon a commission aggregating $2,000. That the corporation began the selling of said land, but that on or about June 15, 1907, the said Garland B. Miller and Miller Brothers' Company took charge of the sales, and have ever since been selling the same under said contract and appropriating to their own use and benefit the commissions thereon so belonging to the corporation, and have never accounted therefor or paid same to the corporation, to its damage $2,000.

"4. That on May 1, 1907, the said corporation had listed with it for sale 1,342 acres of land belonging to Mrs. H. M. King, about three miles east of Falfurrias, upon a commission of $1 per acre, and had secured a purchaser for said land, to wit, one R. E. Woodson, and thereupon became entitled to said commission, but that said Garland B. Miller, while president of the corporation, took the purchaser away from the corporation's agent, and in person completed the sale of said land to said Woodson, and received and applied to his own use and benefit the said commission, without accounting for same or paying same to the corporation, and to its damage $1,342.

"5. That at various times from May 1, 1907, to the filing of suit, said Garland B. Miller and Miller Brothers' Company have appropriated to their own use and benefit various commissions on sales of lands listed with the corporation, said commissions amounting to $6,000, more or less, and belonging to said corporation, without accounting for same or paying same to the corporation, and to its damage $6,000. . . .

"8. That on or about August 2, 1907, said Garland B. Miller and Miller Brothers' Company converted and appropriated to their own use and benefit the lists of prospective investors and purchasers of real estate, hereinbefore described, belonging to the corporation, which lists had a commercial value, and were then and there of the fair market value of $10,000, and to the damage of said corporation in said sum.

"9. That from May 1, 1907, down to the filing of suit, the said four Millers and W. A. Gardner, in the conduct of their private businesses, and as such Garland B. Miller, "Investor's Agent," and Miller Brothers' Company, and in the conduct of other named businesses in which they were financially interested, have taken to themselves the use and benefit of the fixtures, office furniture, typewriters, teams, camp fixtures, stationary, half-tones, maps, advertising matter and other personal property of the corporation, without making any compensation or accounting to said corporation for the use and conversion thereof, and without legal authority therefor, to the damage of said corporation $1,500. . . ."

Coupled with the aforesaid allegations, and in explanation of same, wherever they are at all indefinite, there are allegations that the appellee is ignorant, through no fault of his own, of the exact terms of the various contracts, and the exact amounts and dates involved in certain of the foregoing transactions, by reason of the fact that the officers and directors of said corporation have refused to allow him to inspect and examine the books, records and papers of the corporation, and that for said reason he can not ascertain or allege the said

details with certainty, but that the same are peculiarly and exclusively within the knowledge of defendants in this suit.

In paragraph 19 it is alleged that the said officers and directors have wilfully failed and neglected, and are still so neglecting, to bring suits or otherwise collect various debts, property and claims for damages due or belonging to said corporation by themselves, their relatives and others, in addition to the amounts hereinbefore sued on, the nature and amounts of which debts and claims for damages are unknown to appellee, and can not be alleged by him with certainty, by reason of the aforesaid facts.

In paragraph 21 it is alleged that neither the Miller Brothers' Company, nor said Garland B. Miller, "Investor's Agent," nor the said Garland B. Miller, Richard G. Miller, Robert G. Miller, Lawrence D. Miller and W. A. Gardner, individually, nor either of them, nor all of them together, have visible moneys, property or assets sufficient to pay off their said indebtedness to the corporation hereinbefore set up, or to respond in damages to said corporation for their aforesaid unlawful and fraudulent acts.

In paragraph 22 it is alleged that the aforesaid unlawful and fraudulent acts of said officers and directors of said corporation have caused the loss of its said assets, business, profits and property, and of its many valuable contracts, and have caused debts to be incurred against it as aforesaid; and that thereby its shares have been reduced to a nominal value, and said corporation has been caused to be and now is in imminent danger of insolvency; that its liabilities are in excess of its assets as appearing on its books, and that the original capital has been greatly impaired, and is daily being so impaired; and that the objects and purposes of said corporation have been thereby entirely destroyed and abandoned by its said officers and directors, and that to-day the said corporation serves no useful purpose, save as a cloak behind which its said officers and directors, being a majority of the board of directors and a majority in interest of the stockholders, can and do defraud said corporation, and especially this appellee as a minority stockholder therein, of the natural and legitimate profits of the business for which said corporation was organized, and in which it was engaged up to the time of its said ruin and overthrow by its officers and directors.

The said Garland B. Miller, Richard G. Miller, Robert G. Miller and W. A. Gardner, as such officers and directors of the corporation, are intending and threatening to continue their said fraudulent dealings, whereby they are appropriating to themselves the benefits of said corporation and its business and property while charging against it the expenses connected with the development of the town of Falfurrias, and that thereby the value of appellee's shares of stock will be entirely destroyed, and said corporation will be brought into a condition of insolvency, and that appellee will suffer irreparable loss for which he had no adequate remedy at law. That the appointment of a receiver, forthwith, is urgent and necessary to prevent the further course of the frauds of said officers and directors, and to procure the institution of the suits necessary to collect the various debts and damages due said corporation, not herein sued for, and in danger of be-

coming barred by limitation, and to collect and preserve all of its assets for its bona fide creditors and stockholders.

That by reason of the abandonment and cessation of all the legitimate purposes and functions of said corporation, and by reason of the power and intentions of its directors and officers to continue in their course of fraudulent dealings, the said corporation ought to be by the court, and through its receiver, liquidated, wound up, and dissolved, after an accounting with its officers and directors, and the other defendants herein who have received the benefit of their illegal dealings.

In paragraph 23 it is alleged that, by reason of the control of the corporation by the said Garland B. Miller, Richard G. Miller, Robert G. Miller and W. A. Gardner, through their ownership of the majority of its capital stock and their being a majority of the board of directors, and by reason of their being interested adversely to the corporation in respect to the matters and claims herein sued on, it was useless, and it would have been an idle ceremony for appellee to apply to said officers or said board of directors to bring this suit for the corporation against themselves. That no such application was made, but appellee brings this suit as a shareholder in said corporation, and in its behalf and for its benefit.

The prayer of the petition is that a receiver be appointed forthwith for said corporation, with the usual powers, and that the defendant officers and directors be required to surrender to him the property, books, papers, etc., of the corporation, and that they be restrained from making any disposition of its property or any contracts concerning same, and from collecting or receiving any moneys due said company pending the receivership. And that, upon a final hearing, the said defendant officers and directors, and the said Garland B. Miller, "Investor's Agent," and said Miller Brothers' Company, be required to account for and pay over all moneys and property of said corporation that have come into their hands, etc., and that appellee recover, on behalf of said corporation, from the said defendant officers and directors the various sums of money and damages herein alleged to be due said corporation by them, respectively, with legal interest thereon, and for his reasonable attorney's fees and all costs of suit, and for the dissolution and winding up of said corporation, and for such other and further and different orders, decrees and relief as he may be entitled to under his pleadings.

This petition is verified by the oath of appellee, G. R. Spielhagen.

To this petition defendants answered by a general demurrer and numerous special exceptions, the nature of which will be indicated by the questions hereinafter discussed and decided, and by the sworn answer, denying generally and specifically the allegations of the petition. Some of the special denials contained in said answer are, in substance, as follows:

In explanation of the removal of its offices, the corporation alleges that this was done for economy's sake, and that its business was conducted as before without charge being made therefor.

In regard to its contract with John H. Houghton and others for the sale of the Seeligson Ranch, which is admitted, the corporation alleges "that said contract failed, and this defendant is not entitled

to commissions therefrom." No further allegation is made concerning this matter.

In regard to the said contract with R. P. Haldeman for the re-sale of 6,300 acres out of the same land, the corporation denies that it had "the contract as specified and described in subdivision marked 'eighth' in said petition."

In regard to the contract with Alex. A. Sharp for the resale of 2,000 acres of land belonging to him, the corporation denies that it had "a contract as specified and described in the ninth subdivision of said petition." It also alleges that it did have a contract with Mrs. H. M. King for the sale of land to said Sharp on which the commissions were received and turned over to it; that was in the summer of 1906.

In regard to the contract for the sale of 1,342 acres belonging to Mrs. H. M. King, the corporation denies that it had "a contract with Mrs. King as specified in the tenth subdivision of said petition."

The corporation denies the insolvency, etc., of its said officers and directors.

The matters alleged in paragraph twenty-two of the petition concerning the imminent insolvency of the corporation, the value of its shares, appellee's lack of adequate remedy at law, his danger of suffering irreparable loss, and the grounds alleged therein to show the necessity for the appointment of a receiver, are all met by the following denial: "That all of the allegations contained in the twenty-second subdivision of said petition, as alleged, are untrue, and are now here specially denied," without any further allegation concerning same.

In regard to the allegation contained in paragraph twenty-three of the petition, as to the control of the corporation by its said officers and directors, and the futility of applying to them for relief against their acts herein complained of, the corporation admits said control, alleges that the majority of the stockholders are satisfied with the management, and protest against the appointment of a receiver, and denies that said officers and directors are adversely interested to the corporation. It also alleges that its officers have notified appellee that they were willing to meet him amicably to adjust any difference between them, etc., but that he has not made any objections to said officers, but left them to believe that everything was satisfactory, etc.

Appellants under appropriate assignments of error very earnestly insist that plaintiff's petition alleges no cause of action against the defendants, and the right to the appointment of a receiver being ancillary only, it can not be invoked by one who does not show a right to recover on the demands declared on in the petition; and further, that if the petition shows a cause of action against the defendants, the facts alleged are not sufficient to authorize the appointment of a receiver.

We think it clear that each of the several allegations of misappropriation by the defendants of funds and property belonging to the corporation is a sufficient statement of a cause of action in favor of the corporation against said defendants, and the prayer for general relief would authorize the rendition of judgment upon these demands. The petition being sufficient in this regard, appellants' contention

that no right to the appointment of a receiver is shown because no cause of action is alleged against the defendants, is without merit.

The right of a minority stockholder to maintain a suit in behalf of the corporation against its defaulting officers and directors to recover funds and property of the corporation fraudulently appropriated by them, and for the redress of other fraudulent and *ultra vires* acts, can not be questioned, and the weight of authority supports the proposition that in a suit of this character a court of equity has the inherent power, in a proper case, to displace the management of guilty or negligent officials by the instrumentality of a receiver. This power, however, will not be exercised and the property of the corporation taken out of the hands of the managers selected by it, unless such course is necessary for the preservation of the property and for the protection of the rights of the minority stockholders.

In the present case we think the allegations of the petition sufficiently show the necessity for the appointment of a receiver in order to preserve and protect the property and business of the corporation and the interest of plaintiff therein. If the allegations of the petition are true, the continued management of the affairs of the corporation by the defendants will result in the greatest injury to its business, if not in its complete destruction. It is impossible for the business of rival and competing firms or corporations engaged in the business in which the defendants are engaged to be managed by the same officers without the greatest injury to the business of the one or the other of such concerns, and since the defendants can not be enjoined from pursuing their own business in competition with the business of the corporation, the only adequate protection to the corporation and to the interest of the plaintiff is to take the management of the affairs of the corporation from the hands of the defendants.

The majority of the stock of the corporation being owned by the defendants, their continued management and control of its affairs can only be prevented by the interposition of a court of equity. Unless he can obtain the aid of the strong arm of a court of equity, no one is more helpless than the holder of a small portion of the stock of a corporation when the large stockholders combine to advance their private interest at the expense of the corporation. To deny plaintiff the right to have a receiver appointed would be to permit the majority stockholders, who hold the offices and manage the affairs of the corporation, to divert its entire business to the other concerns in which they are interested, and thus destroy the value of plaintiff's stock. We can not believe that a court of equity is powerless to prevent a wrong of this kind.

We think the facts alleged in the petition are amply sufficient to authorize the appointment of a receiver. Becker v. Gulf City Street Railway Co., 80 Texas, 483; Houston Cemetery Co. v. Drew, 13 Texas Civ. App., 536; Evans v. Brandon, 53 Texas, 56; Mussina v. Goldthwaite, 34 Texas, 132; Dodge v. Woolsey, 18 Howard, 331; Hawes v. Oakland, 104 U. S., 450; In re Lewis, 52 Kan., 660, 35 Pac., 287; Aiken v. Colorado River Ir. Co., 72 Fed., 591; Columbia Nat. S. D. Co. v. Washed Bar S. D. Co., 136 Fed., 710; Cantwell v.

Columbia Lead Co., 97 S. W., 167; Pomeroy's Equitable Remedies, secs. 120 and 122.

The objection that a court of equity is without authority to appoint a receiver in a suit of this character because such appointment would result in a dissolution of the corporation which could not be decreed by the court upon the grounds alleged, and therefore to allow the appointment of a receiver in such cases would be to authorize the court to accomplish indirectly that which it has no power to do directly, is not sound. The appointment of a receiver does not necessarily result in the dissolution of the corporation. That result may finally be reached, but does not follow as a matter of course from the appointment of a receiver, and the mere probability that the dissolution of the corporation may result should not tie the hands of a court of equity and prevent the use of the only remedy adequate to the prevention of wrongful and fraudulent acts of the officers and majority stockholders, the continuance of which will work irreparable injury to the minority stockholder.

The authorities above cited fully sustain the proposition that, under the facts in this petition, which show that it would be idle for plaintiff to expect to obtain any relief from the directors of the corporation who are the parties guilty of the wrongs complained of, he was not required, before bringing his suit, to appeal to said directors for a redress of his grievances, and the objection to the petition on this ground can not be sustained.

We are not prepared to hold, under the decisions of this State, that a specific denial under oath by the defendant of all of the material allegations of a petition requires a trial judge, in the absence of further evidence or additional affidavits in support of the petition, to refuse to appoint a receiver. There is authority for the proposition that in such case the decision of the trial judge on such conflicting affidavits will be binding on the appellate court. In the case of Houston Cemetery Co. v. Drew, *supra,* this court, speaking through Chief Justice Garrett, says: "The court appointing a receiver is vested with large discretion as to the necessity, and its decision of the facts upon the supporting and counter affidavits, when they are conflicting, must be accepted as conclusive. The question, therefore, that remains for the appellate court, is to determine whether or not the case made is one in which a receiver ought to be appointed. If there are any grounds of relief prayed for that would authorize the appointment of a receiver, it need not be made to appear conclusively that plaintiff is entitled to recover upon them; it will be sufficient if it appears that he has a reasonable expectation of obtaining such relief."

It may be conceded, however, that as a general rule a receiver will not be appointed when the equities of the bill are denied by the sworn answer of the defendants, and yet the appointment of a receiver in this case can be sustained on the ground that the denials of some of the material allegations of the petition are not sufficiently definite. For example, in denying the allegations of the petition as to the transaction with John Houghton, the defendants simply aver "that said contract failed, and defendant (corporation) is not entitled to commission therefrom." This is not a specific or complete denial of the alle-

gation of the petition, "That on March 31, 1907, the corporation entered into a contract in writing with John H. Houghton and others, as the owners of a tract of 43,275 16/100 acres of land, more or less, in Nueces and Duval Counties, Texas, known as the Seeligson or Galveston Ranch, for the sale of said ranch upon a commission; that the corporation secured a purchaser for said land, to wit, one R. P. Haldeman, and that a sale thereof to said purchaser was made through the agency and efforts of said corporation; and that the corporation became entitled to the commissions under said contract, amounting to seventy-five cents per acre, and aggregating about $33,000. That installments of said commission amounting to $7,500 have been collected and received by said Garland B. Miller, and that he is collecting and receiving the remainder thereof as the same became due. That said Garland B. Miller has never paid over said moneys or any part thereof to the corporation, or accounted for the same, but has received and appropriated the same to his own use and benefit, and is so receiving and appropriating the remaining installments as they are respectively paid, to the damage of said corporation $33,000."

The same may be said in regard to the allegation "that about January 1, 1908, they (the defendants) abandoned the offices of said corporation and removed its furniture, records and files to another office at Falfurrias, occupied jointly by the said Garland B. Miller, 'Investor's Agent,' and by the said Miller Brothers' Company, taking down the signs of said corporation and not putting them up at the new office, which office is decorated and advertised by the signs of said Garland B. Miller, 'Investor's Agent,' and said Miller Brothers Company, and thereby they have induced and are still inducing persons having business with said corporation to believe that it was no longer engaged in such business, and to place their business in the hands of them individually and as such Garland B. Miller, 'Investor's Agent,' and Miller Brothers' Company."

The only answer made to this charge is, in substance, that the change of office was made for the sake of economy. We think it clear that the trial court was not required, upon these indefinite denials of the material allegations of the petition, to refuse to appoint a receiver.

It would serve no useful purpose to discuss the various assignments of error in detail. What we have said disposes of all the material questions presented. None of the assignments present any error which requires a reversal of the judgment, and the order of the trial court appointing a receiver is affirmed.

## ON MOTION FOR REHEARING.

As shown in the opinion of the Supreme Court delivered April 20, 1910 (127 S. W., 164), in answer to certified question propounded by us in this case, we erred in our former opinion herein in not sustaining appellants' assignments of error complaining of the judgment of the court below on the ground that appellants, having denied under oath the material allegations of plaintiff's petition, the court was not authorized to appoint a receiver upon the sworn petition, unsupported by any additional affidavits. It follows that appellants' motion for

rehearing should be granted, the judgment of affirmance set aside and the judgment of the court below reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*