GALVESTON, H. & S. A. RY. CO. et al. v.
HARRIS. (No. 6752.)

(Court of Civil Appeals of Texas. Galveston.
May 5, 1914.)

EXECUTION (§ 172*)—APPLICATION FOR TEMPORARY INJUNCTION—AFFIDAVITS.

In an action to enjoin the enforcement by execution of a judgment for injuries rendering the judgment plaintiff impotent at the time of trial, the refusal of a temporary injunction was not error, where the supporting affidavits showed merely that he attempted, after the trial, to induce his sister-in-law to submit to him, and to run away with him, and told her that he was not and never had been impotent, and strong controverting affidavits were made by plaintiff and his wife, and affidavits of physicians showed that his condition and actions were not inconsistent with impotency.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 519–539; Dec. Dig. § 172.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the Galveston, Harrisburg & San Antonio Railway Company and others to enjoin A. H. Harris from enforcing a judgment by execution. From judgment for the defendant, plaintiffs appeal. Affirmed.

See, also, 159 S. W. 907.

McMEANS, J. This is an appeal from an order of the district court of Harris county refusing to grant to appellants a temporary injunction restraining the appellee A. P. Harris and others from enforcing, by execution, a judgment theretofore rendered in Harris' favor against the appellants.

Appellants alleged that on March 11, 1912, appellee Harris instituted suit in the district court of Harris county against appellants to recover damages for personal injuries sustained by him while in appellants' employment, said suit being styled A. P. Harris v. Galveston, Harrisburg & San Antonio Railway Company et al., and numbered on the docket of said court 54797; that a trial on December 4, 1912, resulted in a verdict and judgment against defendants, appellants here,

for $27,500; that on appeal to the Court of Civil Appeals the judgment of the district court was affirmed for $22,500 after appellee had entered a remittitur of $5,000; and that a writ of error from the judgment to the Supreme Court was applied for and refused.

The fourth and fifth paragraphs of the petition are as follows:

"Plaintiffs further aver and charge that said judgment 'in favor of said A. P. Harris in said cause No. 54797 should now be set aside, canceled, annulled, and held for naught, for that the same was obtained and procured by reason of the willfully false and fraudulent testimony given by said A. P. Harris himself upon the trial of said cause in the district court, upon the issues joined therein, which substantially affected the right and extent of his recovery in said cause in this. the said A. P. Harris in said cause No. 54797 alleged in his petition, upon which the trial was had, that, among other injuries sustained by him at the time of the accident complained of, he had been rendered impotent, which allegation was denied by the defendants in said cause and issue was joined thereon; that upon the trial of said cause the said A. P. Harris, sworn in his own behalf, and to support the issue of alleged impotency, testified substantially as follows: Since the accident to me I have not had any manhood. All the time till I got hurt, I was the same as any other man; but now I can't have intercourse with my wife. I just live at home; that is all. That is the reason I am so unhappy, I guess, and miserable. I am not able to produce an erection. I didn't notice it until I got on my crutches; then I wanted to have an intercourse and couldn't.' I tried, and even ate raw eggs and everything else, I done everything a man could do to try to do it. I am 35 years old.

"Plaintiffs further aver and charge that the testimony of said Harris with regard to his alleged impotency was willfully and knowingly false, and, although the plaintiffs at the time of said trial believed said testimony to be false and made diligent efforts to discover and make known to the jury the falsity thereof, they were unable to do so, on account of the personal and private nature of said alleged injury; but plaintiffs now aver and charge that since the trial of said cause and the affirmance of said judgment they have received voluntary information from the family of the wife of said A. P. Harris showing that said Harris was not in fact impotent at the time of the institution and trial of said suit and at the time testified therein, and that he has since said trial and the giving of said testimony stated that his testimony with regard to his alleged impotency given upon the trial of said cause was in fact false, and that he was a sound man; that said information first reached the plaintiffs on, to wit, February 26, 1914, in a letter addressed to Messrs. Parker & Garwood, members of the firm of general attorneys representing the plaintiffs herein, which said letter is as follows:"

The letter referred to is one from W. E. Shill, the father of appellee's wife, dated February 21, 1914, in which it is stated in substance that, while appellee and his wife and her mother and sister were temporarily stopping at a hotel in New Orleans on January 12, 1914, the appellee attempted a criminal assault upon his daughter Ida Mae. Appellant further alleged that after the receipt of this letter and another letter from the same party on or about March 6, 1914, a

---

representative of the claim department of appellants proceeded to McLaurin, Miss., where the Shills then lived, and obtained affidavits from Ida Mae Shill, Mrs. W. E. Shill, and W. E. Shill, under date of March 14, 1914, substantial copies of which were attached as exhibits to the petition; and that W. E. Shill had delivered to appellants the original of a letter written to Shill and wife by the wife of appellee relating further to the transaction in the hotel at New Orleans, a copy of which was also attached to the petition as an exhibit. The sixth paragraph of the petition is as follows:

"Plaintiffs aver and charge that it appears from the affidavits aforesaid that the said A. P. Harris is not impotent, at this time, and was not at the time of said trial, and that he admitted to the said Ida Mae Shill that he swore falsely when he testified on the trial of the said cause that he was impotent. Plaintiffs have reason also to believe, and do believe, that while the said Harris also testified upon the trial of said cause that he had sustained other severe and grievous injuries, that he had in truth and in fact sustained only slight and inconsequential injuries, and that he willfully and knowingly gave false testimony upon the trial of said cause with reference thereto. Plaintiffs further charge that, by reason of the false and fraudulent testimony of the said A. P. Harris upon the trial of said cause as to his true condition, the court and jury were misled and deceived and, being so misled, returned a verdict for an amount wholly unreasonable and unconscionable; that because thereof the ends of justice have not been attained in said cause, and said judgment should therefore be canceled, annulled, and held for naught. Plaintiffs further aver that neither they nor their attorneys had any knowledge or suspicion whatsoever of the transaction in the hotel at New Orleans referred to in the affidavits attached, or the real condition of the defendant with respect to his alleged claim of impotency, until the receipt of the letter copied in paragraph fifth hereof on, to wit, February 26, 1914, and that since the receipt thereof they have proceeded with diligence to obtain the true facts, so as to place them before this court, and expose the fraud practiced upon it."

Appellants further alleged that the appellee and his attorneys, unless restrained, will in due time procure the issuance of an execution to collect the amount of the judgment, and that the same when so issued will be placed in the hands of the sheriff or other proper officer to be levied upon the property of appellants, and that the sheriff would levy same and collect said judgment unless restrained from so doing "to the plaintiffs' great and irreparable injury and damage; the defendant, A. P. Harris, being wholly insolvent, and the plaintiff having no adequate remedy at law." The petition concluded with the prayer that they have judgment canceling and annulling the judgment in cause No. 54797, and for costs, and that pending the hearing that appellee and his attorneys be enjoined from in any manner selling or transferring said judgment or any part thereof, and that the district clerk be enjoined from issuing any execution in said case, and that the appellee, his agents and attorneys, be restrained and enjoined from in any manner proceeding to collect said judgment against the appellants or the sureties upon the supersedeas bond given by them on appeal, and that the injunction be perpetuated upon final hearing.

The affidavit of Ida Mae Shill, referred to in the petition is here given in full.

"I, Ida Mae Shill, being duly sworn on my oath, do say: That I am 16 years old, reaching that age last September. That I know A. P. Harris of Houston, Tex., who sued the Texas & New Orleans Railroad Company for damages alleged to have been sustained by him while switching, on the ——— day of ———,' 191—. That the said A. P. Harris is my brother-in-law, having married my sister. That on or about January 10, 1914, in the city of New Orleans, state of Louisiana, the said A. P. Harris did in the Monteleon Hotel. attempt a criminal assault upon me. That myself, my mother, the said Harris, and the said Harris' wife were on our journey from Melville, La., to Hattiesburg, Miss. That we stopped at said Monteleon Hotel, stopping there from Sunday night until Tuesday morning. That the room occupied by said Harris was adjoining the room occupied by my mother and myself. That there was a door between said rooms allowing passway from one room to the other. That the said Harris claiming that he was not well, and for the purpose of carrying out his designs, under the pretense of wanting some baggage checked, sent my mother and his wife away, and had them leave me to wait on him should he need anything. That I stayed in the room occupied by myself and mother; and, to further carry out his designs, the said Harris pretended that the maid was going to clean his room, and, while I stepped out of our room, he came and got in our bed. When I came back, he claimed he wanted me to make him a toddy, which I did. He asked me to come and get the glass after he had drunk his toddy, and I told him to just set it down. That he told me, 'No, to come and get it.' Not suspecting anything, I went to get the glass, and when I did so he reached up and grabbed me around the waist and pulled me over him, pulling me across him. I tore loose from him and left the room. After that he called me to the door and begged me to leave with him—to run away with him, and we would go where we could not be found. I told him what I thought of him and his conduct. His wife finally came and found out what had happened and pleaded with me not to tell Papa, because Papa would kill him. I did not tell my papa until after we got to McLaurin, and after Harris and his wife had left for Texas. I did not tell it before on account of the pleading and begging of my sister, who was Harris' wife, and I did not want to get Papa into trouble. While we were on the train after leaving New Orleans, he (Harris) came over and sat down on a seat where I was and again began to beg me to run away with him. He stated that he believed I would not do so because I did not think he was a sound man; that he and his wife had swore a lie in regard to his having lost his manhood; and that he was all right, and I could ask his wife. I told him to go away from me, that he was insulting, and to go on back and sit by his wife. He said he did not love his wife, and that I was the only woman he ever loved, and that when he got his money from the railroad he would build me a home and he would do nothing but sit up and look at me, and after he was dead and gone I could marry who I wanted to."

Mrs. Shill in her affidavit corroborates Ida Mae Shill in regard to appellee sending his wife and herself from the hotel to check some baggage and leaving Ida Mae with him

while they were away. She says Ida Mae told her of appellee's conduct after appellee and his wife left for Texas, and that the reason given by her for not telling sooner was on account of her sister, the appellee's wife, and because she knew her father would kill appellee and get into trouble. She further stated that in January, 1914, Mrs. A. P. Harris in complaining of the way appellee was doing, and while talking about the railroad suit, said, "Mama, I have sworn things for that man that were not right."

The only portion of W. E. Shill's affidavit at all material is that in which he stated that his daughter Ida Mae told him of appellee's conduct toward her in the hotel in New Orleans.

The letter written by appellee's wife to her father and mother consists mainly in an appeal to her father to not press the charges against her husband and to cease his efforts to prevent her husband from collecting the judgment.

Before the court acted upon the petition for temporary injunction, the appellee filed his answer, in which he denied under oath all the material allegations of the petition, and specifically denied that he had sworn falsely as to his impotency upon the trial, and specifically denied the statements of Ida Mae Shill that he had attempted a criminal assault upon her and that he had asked her to run away with him and that he had told her that he and his wife had sworn falsely to his having lost his manhood and that he was all right. He alleged that his wife did not testify in the trial of his suit and therefore could not have sworn a lie therein regarding his "lost manhood." He attached to his answers the affidavit of his wife, Mrs. A. P. Harris, Dr. Gavin Hamilton, and Dr. F. H. Neuhaus. Mrs. Harris stated under oath that she was present at the trial of her husband's case and heard him testify in regard to his physical condition and that his testimony copied in paragraph 4 of plaintiffs' petition, which she had read, was true; that his statement therein that he could not have intercourse with her was true; and that his condition of inability to have intercourse with her "has continued to this time, and he is now and has been impotent." She corroborated the statement of Ida Mae Shill, about the latter remaining with appellee while affiant and her mother went out to check baggage, and says that when she returned to the hotel she found there her husband and sister Ida Mae and a Mr. Powers, and that her sister said nothing to her or her mother about any misconduct of appellee during their absence. She tells of the journey of all of them from New Orleans to Hattiesburg, Miss., where they spent four days together, in a boarding house, from thence to McLaurin, the home of her father and mother, where they stayed with her parents for about a week, and that not until her husband left to return to Texas did her sister, Ida Mae, tell her that appellee had made improper advances toward her in New Orleans. She further stated that she had discussed with her mother more than once the condition of her husband regarding impotency; that she told her mother he was impotent, and that she did not believe he would ever regain his health or his powers in that respect; that since his injury he has been practically a nervous wreck; that he is still paralyzed in his right leg; and that his testimony on the trial regarding his injuries, their nature and extent, according to her knowledge and observation was true in all respects and that such condition has continued to the time of making affidavit.

Dr. Gavin Hamilton stated in his affidavit that he had again examined appellee and had read over the testimony that he (affiant) had given at the trial.

"From a physical examination made to-day I find that he has made absolutely no improvement in the condition of his right leg since the time of giving the testimony; the condition of this leg corresponds exactly to the conditions then, with the exception that the measurement of the circumference of the two legs shows a slightly greater discrepancy than existed at the time of the trial. This would indicate that, instead of an improvement in the meantime, there has been a further degree of atrophy. Regarding the condition of impotency, this is a subjective symptom. Impotency would be consistent with his general condition. In a patient so afflicted, a desire for intercourse with inability to perform is not uncommon."

The affidavit of Dr. Neuhaus is as follows:

"I hereby state that I was present at the examination—and participated in same—that Dr. Gavin Hamilton made of Mr. A. P. Harris of Houston, Texas, to-day, and that I have read the report made by him, in which I concur; also from the examination I see no reason to change the opinion I gave in my testimony at the trial, to which testimony I have just referred."

The testimony of both these physicians will be found in the reported decision of the case, 159 S. W. 907.

On April 3, 1914, the application for a temporary injunction was heard by the court upon the petition and answer and supporting and controverting affidavits, and thereupon appellants' prayer for injunction was, by the judgment of the court, denied; from which judgment the appellants have prosecuted this appeal.

This appeal is before us on the record only; neither party having filed briefs.

After carefully considering the sworn pleadings of the parties, and the supporting and controverting affidavits, we have concluded that the trial judge did not err in refusing to grant the temporary injunction applied for. The affidavit of Ida Mae Shill in regard to appellee's alleged misconduct in the hotel at New Orleans was at most but a circumstance casting suspicion upon appellee's testimony that up to the trial he had been impotent as the result of his injury, but standing alone it was not sufficient to

raise the issue of the falsity of his testimony, for he might have been impotent at the time of the trial and have regained his normal sexual powers at the time of his alleged misconduct. National Concrete Const. Co. v. Duvall, 153 Ky. 394, 155 S. W. 761. Her statement to the effect that appellee told her that he was not and had never been impotent, and that he had sworn falsely in respect thereto at the trial, is entitled to greater weight, but is not of such controlling force as to require the granting of the writ, in view of the sworn denial of appellee that he had made such statements to her, and of the affidavits of his wife that he was impotent at the time of trial and has continued so, and the affidavits of his physicians that impotency would be consistent with his general condition.

The trial judge had the sworn denial and the controverting affidavits before him when he passed upon the application, and, if he gave credence to these, as he evidently did, his action in refusing the injunction was correct. Falfurrias Immigration Co. v. Spielhagen, 129 S. W. 164; Houston Cemetery Co. v. Drew, 13 Tex. Civ. App. 536, 36 S. W. 802. And this being so, it becomes our duty to affirm the judgment, and it has been so ordered.