## BURNHAM v. ARCOLA SUGAR MILLS CO. et al.

### No. 437.

District Court, S. D. Texas, Houston Division.

Aug. 13, 1932.

G. H. Penland, of Dallas, Tex., and W. W. Naman and Spell, Naman & Howell, all of Waco, Tex., for plaintiff.

Walter F. Brown, of Houston, Tex., for defendants.

KENNERLY, District Judge.

This is a suit on the equity side by D. H. Burnham, plaintiff, a citizen of Illinois, against the Arcola Sugar Mills Company (a Texas corporation), Kate Scanlan, and Wm. J. Dermody, defendants, all of Houston, Tex., and citizens of Texas. The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $3,000.

The case was tried on plaintiff's original bill, filed November 21, 1930, and defendants' answer, filed December 30, 1930. Plaintiff's bill contains a prayer for the appointment of a receiver pendente lite, and defendants' answer contains a so-called demurrer. Neither were presented to the court.

Plaintiff alleges that he owns 400 shares of the capital stock of the Sugar Mills Company. The defendant Kate Scanlan and her sisters own the balance, 7,100 shares, of such capital stock. The pleadings, the facts, and the character of relief sought by plaintiff will be stated in the discussion.

(1) At the threshold of the case, plaintiff is met by defendants' claim that he (plaintiff) does not own such 400 shares of stock, and therefore may not maintain this suit.

The evidence shows that defendant Kate Scanlan owed plaintiff $19,000, and January 6, 1921, executed to him her note for that amount, bearing 6 per cent. interest, and transferred, delivered, and pledged to him, to secure such note, certificate No. 49 for 400 shares of the capital stock of such company, such pledge being in the following language: "And the undersigned hereby gives the payee of said note, and its assigns authority to collect and otherwise convert the said securities and to sell the said property, or any part thereof, or any substitutes therefor, and all additions thereto, on the maturity of the above note, or at any time thereafter, or before, in the discretion of the legal owner or holder of said note, at public or private sale, without advertising the same, or demanding payment or giving notice, with the right of said payee or assigns to be the purchasers thereof when sale is made at any brokers' board or at public sale, and it is further agreed that if the undersigned shall at any time fail to keep with the holder of said note a margin of security satisfactory to said holder, or in case of the insolvency of the undersigned in any manner evidenced, or in case any judgment is entered against the undersigned, then and in any of said cases the above note and accrued interest thereon shall at the option of the legal holder or owner of said note immediately become due and payable, and without any demand or notice, any funds which may be in the hands of the payee or holder of said note, to the credit of the undersigned may be immediately applied to the payment of said note, and the securities so held, as aforesaid, may be collected, converted or sold as above provided, and upon any such collection, conversion or sale, after deducting all costs and expenses, the holder of said note is authorized to apply the net proceeds of said collection, conversion or sale to the payment of said note and any, either or all liabilities, as aforesaid, as said payee or assigns shall elect, returning the overplus to the undersigned; and in case the proceeds of the sale of said property shall not cover the principal, interest and expenses, the undersigned engages to pay the deficiency forthwith after such collection, conversion or sale, with interest, as stated in the above note."

No part of such note has been paid or satisfied, nor has defendant Kate Scanlan (as she claims) any legal offsets or credits against same. On October 15, 1928, such shares of stock were duly and legally sold under the terms of such pledge, and plaintiff became the purchaser and owner, and has since been, and is now, the owner thereof.

(2) Plaintiff claims that defendant Sugar Mills Company has long since ceased to do business as a manufacturer, etc., of sugar, and has abandoned the purpose for which it was formed and incorporated, and that plaintiff is entitled to have such company dissolved, its debts paid, and the balance of its assets distributed among its stockholders.

The purpose for which such company was formed, in fact, and as expressed in its charter, dated March 12, 1903, is: "The purpose for which this corporation is formed is the manufacturing of sugar, and the transaction of all business incident thereto, and the purchase and sale of such goods, wares and merchandise as may be used for or incident to such business, and the ownership of such buildings, machinery, equipment and lands as may be necessary for that purpose."

Its assets consist chiefly of a tract of approximately 8,600 acres of land in Fort Bend county, Tex., in this district, suitable for the growing of sugar cane for the manufacture of sugar. There was formerly on such tract of land a large sugar mill used for the manufacture of sugar. About 1914 such company ceased manufacturing sugar and ceased using such sugar mill, and about 1929 it was dis-

mantled, sold, and removed. About 1914 the growing of sugar cane was abandoned, and, since that time, such land has been used for the growing of cotton, corn, and similar crops (chiefly cotton), other than sugar cane. The evidence justifies the finding, and I find, that such corporation has abandoned the purpose of its incorporation, and that its assets have not been used since about 1914, are not now being used, and it is not intended by defendants in the future that they shall be used, to carry out the purpose of incorporation.

(3) Since about 1920, no adequate and intelligible books of account and records have been kept by such company, from which its financial situation and status may be ascertained during such period and now. Such fragmentary and sporadic books and records as have been kept, and the other evidence, show that its moneys derived from its properties have been mingled with those of Kate Scanlan and others with whom she is connected by kinship and business, so that it is practically impossible to determine the state of the accounts between them. There are strong reasons to believe that she, and/or others with whom she is connected, as stated, are largely indebted to such company. Whether this is true can only be determined by a suit, in which a full and correct accounting can be had. The present board of directors of such company are as follows: Kate Scanlan, her chief employee, William J. Dermody, her counsel, Walter F. Brown, Esq., and her two sisters, Lillian Scanlan and Stella Scanlan.

The present officers of such company are as follows: Kate Scanlan, president and treasurer, William J. Dermody, vice president, and Walter F. Brown, secretary.

With some unimportant variations, these have been the officers and directors for a number of years.

Plaintiff has practically continuously since the purchase by him of such 400 shares of capital stock been endeavoring to have recognition as a stockholder, ascertain the true financial condition of such company, ascertain the condition of the accounts between such company and Kate Scanlan and others, have its assets used for the purpose of its incorporation, and participate in its affairs, but defendants have steadfastly (and so far successfully) resisted plaintiff's attempts. This suit followed.

(4) At the close of the hearing, I indicated that, if I reached the conclusion that plaintiff has shown himself to be the owner (or that he has the status of an owner) of the shares of stock claimed by him, I would give him some character of relief. I invited counsel to suggest in their briefs the character of relief which would best conserve the estate and be least expensive. I find in the briefs no practical suggestion short of the relief prayed for by plaintiff, i. e., dissolution of the corporation, payment of its debts, and distribution of its assets among its stockholders, and, in connection therewith, the appointment of a receiver.

Defendants, in their briefs, strenuously combat that suggestion, and it will be first of interest to take up their contentions.

They say that article 1387 [1] of the Texas Revised Civil Statutes of 1925 and Amendments points to the only way plaintiff has for relief. It will be observed that article 1387 gives seven different ways in which a corporation may be dissolved.

The first is by the expiration of the time limit in its charter. The charter of the Sugar Mills Company expires March 12, 1953. If defendants mean to suggest that plaintiff must sit by and wait until the expiration of that time, then the suggestion must, of course, be dismissed as of no value.

The third subdivision of such article provides that a corporation may be dissolved at a stockholders' meeting, when four-fifths in interest of holders of its outstanding stock shall vote therefor. It is manifest that plaintiff, who owns only 400 shares, out of a total of

[1] "Art. 1387. A corporation is dissolved:

"1. By the expiration of the time limited in its charter.

"2. By a judgment of dissolution rendered by a court of competent jurisdiction.

"3. Where four-fifths in interest of all the stock outstanding shall vote in favor of a dissolution at a stockholders' meeting called for that purpose on notice signed by a majority of the directors, stating time, place and object of the meeting, served personally or by mail at least thirty days next before the meeting. If, at said meeting, four-fifths in interest of all the stockholders of said company shall consent in writing to the dissolution of the corporation, such written consent, together with a list of the directors and officers of the company, giving postoffice address and place of residence of each, certified by the president and secretary and treasurer as a true and correct action of the stockholders, shall be filed with the Secretary of State.

"4. When, without a stockholders' meeting, all the stockholders of the corporation consent in writing to a dissolution, the same shall be certified to as above and filed with the Secretary of State. When any such certificate is filed with the Secretary of State, he shall issue a certificate that such consent has been filed and that the corporation is dissolved; and said officer shall so note on the ledger in his office.

"5. By forfeiture of its charter without judicial ascertainment under any special provision of law.

"6. Where a corporation created under this title or a general law of Texas shall fail to commence active operations within three years after filing its charter with the Secretary of State.

"7. Whenever a corporation upon proper judicial ascertainment is found to be insolvent."

7,500 shares, of such capital stock, cannot proceed under such subdivision.

The fourth subdivision of article 1387 provides that when, without a stockholders' meeting, all of the stockholders consent to its dissolution, it shall be dissolved. This affords plaintiff no relief.

The fifth subdivision of article 1387 provides for the dissolution of a corporation when its charter is forfeited, without judicial ascertainment, under any special provision of the law. Presumably this refers to dissolutions where the charter is forfeited for failure of a corporation to pay its franchise tax, etc. If defendants' suggestion is that plaintiff must sit by and wait until such corporation fails to pay its franchise tax, etc., and thereby suffers a forfeiture of its charter, then such suggestion must also be dismissed as without merit.

The sixth subdivision of article 1387 provides for a dissolution where a corporation shall fail to commence active operations within three years after its charter is filed. There is neither allegation nor proof that the Sugar Mills Company failed to commence active operations within the time specified. The complaint is it ceased operations.

The seventh subdivision provides for a dissolution whenever a corporation, upon proper judicial ascertainment, is found to be insolvent. There is neither allegation nor proof that this corporation is insolvent.

The second subdivision of article 1387 provides that a corporation may be dissolved: "By a judgment of dissolution rendered by a court of competent jurisdiction."

Defendants insist that this subdivision refers to a suit to dissolve a corporation under article 1383.[2] It is clear that it is subdivision 7 of article 1387 which refers to article 1383.

■ Citing a number of cases, which in the main refer to charter forfeiture suits against corporations by the state brought by its Attorney General, defendants also insist that suits for the dissolution of a corporation must be brought by such Attorney General. To say that plaintiff must await such action is most unreasonable. It is true that the state may sue a corporation for failure to use its corporate assets for the purposes prescribed

in its charter, but that does not affect plaintiff's right to independent relief.

Defendants also insist that, if plaintiff believes that Kate Scanlan and others are indebted to the Sugar Mills Company, plaintiff may, in the name of the corporation, prosecute a suit against them to recover the amount due. Under the peculiar circumstances of this case, where no dependable books of account have been kept by the corporation over a period of many years, a suit of that character by plaintiff would be wholly inadequate to afford him the relief to which he is entitled. Besides, such a suit would afford him no relief in the matter of the corporation having abandoned the carrying out of the purpose set forth in its charter, and the corporate assets being utilized for purposes wholly foreign to the purpose of its incorporation.

■ (5) I have reached the conclusion that plaintiff, whether he be regarded as proceeding under subdivision 2 of article 1387, or otherwise, because of the abandonment by the corporation of the purpose of its incorporation, and the use of its assets for other purposes, is entitled to have the corporation dissolved, its debts paid, and the balance distributed among the stockholders, and a receiver appointed to carry out such dissolution, etc.

I think it is equally clear that under the peculiar circumstances of this case, and because plaintiff can have no adequate relief otherwise, plaintiff is entitled to the appointment of a receiver, in order that such receiver may bring any and all suits, and take other appropriate action to recover the assets of the corporation, including action against Kate Scanlan and others to determine what, if any, amount she owes such corporation. People's Inv. Co. v. Crawford (Tex. Civ. App.) 45 S. W. 738; Falfurrias Immigration Co. v. Spielhagen, 61 Tex. Civ. App. 111, 129 S. W. 164; Yount et al. v. Fagin et al. (Tex. Civ. App.) 244 S. W. 1036; Berkshire Pet. Corp. v. Moore (Tex. Civ. App.) 268 S. W. 484; Prairie Lea Production Co. v. Tiller (Tex. Civ. App.) 286 S. W. 638; Gibbons Mfg. Co. v. Milan (Tex. Civ. App.) 17 S.W.(2d) 843, 844; Sellman et al. v. German Union Fire Ins. Co. (C. C.) 184 F. 977; Carson v. Allegany Window Glass Co. (C. C.) 189 F. 791; Consumers' Gas Trust Co. v. Quinby (C. C. A.) 137 F. 882; Doctor v. Harrington, 196 U. S. 579, 25 S. Ct. 355, 49 L. Ed. 606; Delaware & Hudson Co. v. Albany & Susquehanna R. Co., 213 U. S. 435, 29 S. Ct.

---

[2] "Art. 1383. Stockholders of any insolvent corporation who own twenty-five per cent of its stock, or creditors of any such insolvent corporation who own twenty-five per cent of its indebtedness, may institute and prosecute a suit for the dissolution of such corporation."

540, 53 L. Ed. 862; Stone v. Holly Hill Fruit Products, Inc., 56 F.(2d) 553, 554 (5th C. C. A.).

Let an order be drawn and presented accordingly.

