**PRAIRIE LEA PRODUCTION CO. et al. v. TILLER et al.    (No. 6976.)**

(Court of Civil Appeals of Texas.    Austin.
May 19, 1926.)

**1. Corporations ⚖⇒557(2)—Allegations that minority stockholders will be irreparably damaged and corporation suffer great loss, if not insolvency, held not to authorize appointment of receiver (Rev. St. 1911, art. 2128, § 3 [Rev. St. 1925, art. 2293]).**

Allegations that minority stockholders will be irreparably damaged and corporation will suffer great loss, if not insolvency, unless receiver is appointed for corporation, *held* insufficient to authorize appointment of receiver under Rev. St. 1911, art. 2128, § 3 (Rev. St. 1925, art. 2293).

**2. Corporations ⚖⇒553(6) — Though equity court will not appoint receiver for corporation except incidentally to other relief, receiver will be appointed to prevent loss or dissipation of corporation's assets if pleadings and proof show necessity therefor (Rev. St. 1911, art. 2128, § 4 [Rev. St. 1925, art. 2293]).**

In view of Rev. St. 1911, art. 2128, § 4 (Rev. St. 1925, art. 2293), general rule that equity court has no power to appoint receiver for corporation except incidentally to principal relief sought cannot be arbitrarily enforced, and receiver will be appointed to prevent loss or dissipation of corporation's assets, but necessity therefor must be clearly alleged and proved.

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

### 3. Corporations ⬤614(4).

In absence of allegation that minority stockholders owned 25 per cent. of corporation's stock or that corporation was insolvent, they were not entitled to sue for dissolution, in view of Rev. St. 1911, art. 1203 (Rev. St. 1925, arts. 1383–1385).

### 4. Evidence ⬤253(1).

Statement by a director, tending to show consummation of conspiracy by directors to convert corporation's money, would be admissible against him and against other directors.

### 5. Corporations ⬤557(5).

Evidence *held* insufficient to show fraud and mismanagement by directors of corporation, justifying appointment of receiver for corporation on suit of minority stockholders.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Suit by French Tiller and others against the Prairie Lea Production Company and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Marshall Eskridge, of San Antonio, and E. B. Coopwood and Nye H. Clark, both of Lockhart, for appellants.

Ben F. Cone, of Mexia, and K. C. Barkley and W. Owen Dailey, both of Houston, for appellees.

BAUGH, J. This suit was brought by Tiller and some 42 or 43 others, as plaintiffs, against the Prairie Lea Production Company, a corporation, and against C. C. Dauchy, A. J. McKean, E. W. Smith, Eli Howell, Lee Howell, Frank Baker, and J. B. Pierce, as officers and directors of said corporation, alleging fraud upon and mismanagement of said corporation, and asking for an injunction and the appointment of a receiver.

The following are substantially the grounds alleged by appellees as a basis for the relief sought:

(1) Fraudulent refusal by the president and directors of the corporation, for a period of more than two years prior to the filing of this suit, to render an accounting to the plaintiffs or to call a stockholders' meeting.

(2) Fraudulent sale to Eli Howell, one of the directors of said corporation, of 50,000 barrels of oil at 50 cents per barrel.

(3) That the sales of the corporation had produced from 1922 to 1925 an excess of $300,000 worth of oil which had been converted by the directors to their own use and benefit.

(4) Fraudulent misappropriation by the directors of $20,000 received by the corporation from the Seaboard Oil Company.

(5) Fraud upon the corporation by A. J. McKean, president, and E. W. Smith, secretary, in the execution by the corporation of a note for $24,850 to E. B. McKean, a brother of A. J. McKean, and securing same by deed of trust on the corporation's property, and thereafter causing suit to be filed on said note and a receiver appointed in furtherance of such scheme, and payment by said receiver of $10,000 on said note to A. J. McKean.

(6) Fraudulent increase in the capital stock of said corporation from $100,000 to $500,000, secured through false affidavits made by defendant directors, and filed with the secretary of state, and that the defendants issued to themselves 77½ per cent. of such increased capital stock for the purpose of getting complete control of the corporation.

Upon these allegations the appellees asked for an accounting, the appointment of a temporary receiver, an order requiring the directors to turn over all property of the corporation to such receiver, a temporary injunction restraining them from interfering with the receiver's management of the property, and for a dissolution of the corporation and a distribution of its assets.

Appellants first filed their plea in abatement, asking that appellees' application be dismissed for the following reasons:

"First, because the plaintiffs are not officers of the corporation, and are minority stockholders only, and do not allege that they have made any demand upon the officer of said corporation to file this suit, and do not allege that they had ever made demand upon the officers of said corporation to correct any of the wrongs complained of by them; second, because plaintiffs do not assert any cause of action personal in its nature against any of the defendants, and do not ask for any relief except a receivership and injunction, and which relief cannot be by the court granted except when same is ancillary to a principal cause of action, personal in its nature; third, because it appears from plaintiffs' petition that Prairie Lea Production Company is a corporation; that the other defendants are duly elected officers of said corporation and that they are carrying out the corporate purposes, and it is not shown that the corporation has been dissolved, is insolvent, or in danger of insolvency, or has forfeited its corporate rights; fourth, and because the petition shows upon its face that this suit is not authorized under article 2154 nor under article 2128 of the Revised Civil Statutes of Texas."

This plea being overruled, appellants then answered by general and special exceptions and general and special denials.

After a hearing in chambers, the trial court appointed Lee Howell temporary receiver, ordered the property turned over to him, and granted the temporary injunction prayed for. Appellants filed a supersedeas bond in the amount fixed by the court, and prosecute this appeal.

The first contention made and brought forward in assignments 1 and 2 is that a receivership is authorized only as ancillary to and in aid of an independent cause of action, and that the application in this case, "not showing any other cause of action, and not

asking for any judgment or relief, except the appointment of a receiver" and for an order restraining the defendant from interfering with him, appellants' plea in abatement and general demurrer should have been sustained and said application dismissed, citing the following authorities: Articles 1203, 2154, and 2128, R. S. 1911; Kokernot v. Roos (Tex. Civ. App.) 189 S. W. 505; United N. & S. Oil Co. v. Meredith (Tex. Civ. App.) 258 S. W. 550; People's Inv. Co. v. Crawford (Tex. Civ. App.) 45 S. W. 738; Phœnix Oil Co. v. McLarren (Tex. Civ. App.) 244 S. W. 830; Bordages v. Burnett (Tex. Civ. App.) 221 S. W. 326; 34 Cyc. 32, 33.

It cannot be seriously questioned but that the principal purpose of appellees' suit was to secure the appointment of a receiver and to take the management and control of the corporation's property and affairs out of the hands of its president and board of directors.

[1] Article 2128, R. S. 1911 (article 2293, R. S. 1925), provides that receivers may be appointed, among other things, upon the following grounds:

(3) "In cases where a corporation is insolvent or in imminent danger of insolvency;" and (4) "In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

The only allegation on the danger of insolvency we find in their pleadings is that, "without such receiver, these plaintiffs are and will be irreparably damaged, and said company will suffer great loss, if not insolvency." This allegation is not sufficient to meet the requirements of section 3 of said article. Their right to a receiver, if entitled to one, must therefore be predicated upon section 4 of said article.

[2] Appointment of receivers is one of the prerogatives of a court of equity. As a general rule, however, a court of equity has no power to appoint a receiver for a corporation except as an exercise of a power ancillary and incidental to the principal relief sought by the parties to the litigation. And, in discussing the issue here raised, Judge Neill, in People's Investment Co. v. Crawford, supra, said:

"Courts of equity, by virtue of their general equitable jurisdiction, will not appoint a receiver of a corporation, and assume control and management of its affairs, at the suit of a stockholder alleging fraud, mismanagement, and collusion on the part of the corporate authorities, or ultra vires acts of the directors or of the corporation itself, but in such cases will limit the redress granted to the specific wrongs charged, and will go no further than to enjoin or forbid the misconduct complained of."

This pronouncement of the rule in Texas seems to have been followed and approved in the cases cited by appellants. But such a rule of equity cannot, of necessity, be arbitrarily observed or enforced, regardless of the facts of the particular case.

Though the appointment of a receiver for a corporation is an extraordinary power and one that must be exercised with the utmost care, the tendency of the courts is to permit such appointment when the properties of the corporation are in danger of being lost or dissipated and cannot be preserved to the corporation and the minority stockholders in any other way. However, the pleadings must clearly allege, and the proof must clearly show, such necessity for a receiver to preserve the property of the corporation, before such extreme and harsh remedy can be resorted to. This exception to the general rule above announced, that, where it is necessary for the preservation of the property, a receiver may be appointed, seems now well established. A very able discussion of this question by Judge Pleasants is found in Falfurrias Immigration Co. v. Spielhagen (Tex. Civ. App.) 129 S. W. 164, in which he says:

"The right of a minority stockholder to maintain a suit in behalf of the corporation against its defaulting officers and directors to recover funds and property of the corporation fraudulently appropriated by them, and for the redress of other fraudulent and ultra vires acts, cannot be questioned, and the weight of authority supports the proposition that in a suit of this character a court of equity has the inherent power in a proper case to displace the management of guilty or negligent officials by the instrumentality of a receiver. This power, however, will not be exercised and the property of the corporation taken out of the hands of the managers selected by it, unless such course is necessary for the preservation of the property, and for the protection of the rights of the minority stockholders. * * * The majority of the stock of the corporation being owned by the defendants, their continued management and control of its affairs can only be prevented by the interposition of a court of equity. Unless he can obtain the aid of the strong arm of a court of equity, no one is more helpless than the holder of a small portion of the stock of a corporation when the large stockholders combine to advance their private interest at the expense of the corporation. To deny plaintiff the right to have a receiver appointed would be to permit the majority stockholders, who hold the offices and manage the affairs of the corporation, to divert its entire business to the other concerns in which they are interested, and thus destroy the value of plaintiff's stock. We cannot believe that a court of equity is powerless to prevent a wrong of this kind."

See, also, Mussina v. Goldthwaite, 34 Tex. 126, 7 Am. Rep. 281; Becker v. St. Ry. & Real Estate Co., 80 Tex. 475, 15 S. W. 1094; T. & P. Ry. Co. v. Gay, 86 Tex. 582, 26 S. W. 599; 34 Cyc. 46; 14a C. J. 165, 953; Pomeroy's Equity Jurisprudence, vol. 5, §§ 116–122, pp. 204–216; Berkshire Petroleum Corporation v. Moore (Tex. Civ. App.) 268 S. W. 484. In the case last cited, the San Antonio Court of Civil Appeals, which had thereto-

fore announced the rigid rule in People's Inv. Co. v. Crawford, supra, say:

"In the older cases it was held that the general equitable powers of courts of equity would not justify the appointment of a receiver to assume the management of the affairs of a corporation at the suit of a stockholder alleging fraud or mismanagement. However, the trend of modern authority favors the inherent power of the court in a proper case to place the affairs of a corporation, at the suit of stockholders, in the hands of a receiver, when the officials are guilty of fraud or neglect."

[3] Nor have appellees brought themselves within the express terms of the statute authorizing minority stockholders to sue for dissolution of the corporation. See article 1203, R. S. 1911; articles 1383, 1384 and 1385, R. S. 1925. Nowhere do they allege that they own as much as 25 per cent. of the capital stock or that the corporation is insolvent.

In their third assignment appellants attack the sufficiency of appellees' pleadings. We have serious doubts as to the sufficiency of such pleadings, but, inasmuch as we have reached the conclusion that, under the proof, appellees have not shown themselves, as a matter of law, entitled to the appointment of a receiver, and, since such pleadings can be amended before a trial upon the merits, we pretermit a discussion thereof further than what we have already said.

Appellants' fourth to eighth assignments complain of the admission of certain evidence relative to the matter of the increase of the capital stock of said corporation. It is not necessary for us to discuss these assignments in detail. The matters complained of were admissible on the question of the fraud charged against appellants in making such increase. These assignments are overruled.

[4] In their ninth assignment, appellants complain of the action of the trial court in permitting the witness Trigg to testify that he had a conversation with Eli Howell, one of the defendants and a director of said corporation, in San Antonio, about a month before the trial, in which Howell stated to him that the note held by A. J. McKean was a moral obligation and to be paid only out of the sale of leases belonging to the corporation. We find no error in this. Appellees had charged joint and fraudulent conduct on the part of all said directors in converting the corporation's money, specifying the manner with reference to this particular note, and alleged that said note was not a legal and binding obligation on the corporation. Any statement of one of said defendants tending to show the consummation of such a conspiracy would be admissible, not only as against him, but against the other directors as well. Longworth v. Stevens (Tex. Civ. App.) 145 S. W. 257.

[5] This brings us to the question of the sufficiency of the evidence to authorize the appointment of a receiver and the granting of the injunction. Indubitably, the evidence shows, in some instances, very poor management of the affairs of the corporation, but appellees have clearly failed to show the fraud, conspiracies, and willful conversion of the assets of the corporation to the individual use of the directors as alleged. Even when considered in the light most favorable to the verdict, as contended for by appellees (see Lancaster v. Browder [Tex. Com. App.] 256 S. W. 905), we do not think the evidence authorizes the harsh remedy granted by the trial court. The following facts, with reference to the matters charged as fraudulent by appellees, appear from the evidence to be substantially uncontroverted:

(1) That in the two years prior to filing this suit the corporation was in the hands of a receiver for a period of sixteen months, and that the meeting of such stockholders, called soon after the receiver was discharged, was enjoined by appellees themselves.

(2) That, when the 50,000 barrels of oil were sold at 50 cents per barrel to Eli Howell, a director, charged by appellees to have been a fraudulent sale, there was no pipe line into this field; that oil was then selling at from 45 cents to 50 cents per barrel; that Howell immediately assigned such contract to a refinery without any profit to himself, and such refinery reassigned it to the Grayburg Oil Company at 2 cents or 2½ cents per barrel profit to it.

(3) The proof wholly fails to show that the oil produced from said corporation's wells from 1922–1925 was worth $300,000, or anywhere near that amount, or the conversion of what was received for oil to the personal benefit of the directors.

(4) That, of the $20,000 received from the Seaboard Oil Company, $5,000 was used by A. J. McKean, president of the corporation, in drilling the second well, and the other $15,000 in paying debts of the corporation.

(5) With reference to the McKean note for $24,850, appellees offered practically no evidence to show that it was executed for a fraudulent purpose. It appears that, when originally incorporated, A. J. McKean executed to the corporation a lease on about 500 acres of land for which he was to have $80,000 in stock. Only a small portion of this amount, however, was ever issued to him—less than $10,000. The rest was turned back to the corporation for sale, and at least part of it sold for the benefit of the corporation. Thereafter said McKean sold to the corporation another lease on 70 acres for $14,000; such sum being its undisputed cash value. The note was then executed by the corporation to McKean in payment for this lease and the balance owed him by it on the sale of the stock which was placed in his name originally, but sold for the benefit of the corporation.

(6) On the question of the increase of the capital stock from $100,000 to $500,000, the

evidence clearly fails to sustain any allegation of fraud against appellees. The increase was undoubtedly excessive, but it is not controverted that the directors merely subscribed for the entire amount of the increase in their own names, then assigned same back to the corporation, and had $300,000 of it reissued to all stockholders as a stock dividend, at the rate of three shares to each share of original stock held by them, respectively. The remaining $100,000 of such increase was then held by the corporation as treasury stock and to be sold as such. The voting power of each stockholder and of each director and their respective interests in the corporation appear not to have been changed at all.

Under these circumstances it is manifest, therefore, that no such fraud and mismanagement as that alleged by appellees have been shown which would justify the appointment of a receiver.

For the reasons stated, the judgment of the trial court is reversed, and judgment here rendered, discharging the temporary receiver appointed, and dissolving the temporary injunction granted by the trial court, without prejudice to appellees in the trial on the merits.

Reversed and rendered.