The CITY OF MISSOURI CITY, Texas; Allen Owen, in his capacity as Mayor of the City of Missouri City, Texas; and Jerry Wyatt, Bob Burton, Buddy R. Jimerson, Brett Kolaja, Eunice H. Reiter, and Don Smith, in their capacities as Members of the City of Missouri City, Texas, Council, Appellants,

v.

The STATE of Texas on Relation of the CITY OF ALVIN, Texas; and The City Of Alvin, Texas, Appellees.

No. 14–03–00361–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 13, 2003.

---

J. Grady Randle, Mark C. Watler, Houston, for appellants.

Barney Lynn Knight, Austin, Barry Abrams, Houston, Jerilynn K. Yenne, Angleton, for appellees.

Panel consists of Chief Justice BRISTER and Justices JOHN S. ANDERSON and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from a summary judgment voiding an annexation ordinance passed by the City of Missouri City ("Missouri City"), and awarding attorney's fees to the City of Alvin ("Alvin").[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1960, Alvin passed an ordinance purporting to annex a 100–foot–wide strip of land approximately 137 miles long. The strip extends east from Alvin's east city limit line, runs north along the Brazoria/Galveston County line to a point northeast of Manvel, circles south around to the west side of Manvel, then extends west to the Brazos River, and follows the Brazos River to a point south of the Derrington State Farm. The strip then extends to a point east of Texas Highway 288, from which it runs southeast, following Austin Bayou and various commissioner's precinct lines. The strip next jogs back to the southwest and eventually follows the meanders of Bastrop Bayou to Bastrop Bay, continuing to the "Gulf of Mexico," from which it proceeds northeast to a point on the Brazoria/Galveston County line, and runs back along this line to the point east of Alvin's city limits, referred to above.[2]

Forty-two years later, in September 2002, Missouri City approved an ordinance purporting to annex an L-shaped strip of land 1000 feet wide and extending into the municipal territory and extraterritorial jurisdiction ("ETJ") Alvin claimed by virtue of its 1960 ordinance. The L-shaped strip is attached to a strip of Missouri City territory that is twenty-five feet wide.

The State, on behalf of Alvin, filed a quo warranto action against the City of Missouri City, and against its mayor and council members in their official capacities. The State alleged Missouri City illegally extended its incorporated area into Alvin's municipal territory and further violated

---

1. Unless it is necessary to differentiate, we refer to the City of Missouri City, its mayor, and its council members collectively as "Missouri City." When it is necessary to differentiate the city from its officials, we use the designation, "the City of Missouri City." We refer to the City of Alvin as "Alvin"; and the State of Texas, as "State"; and to Alvin and the State collectively, as appellees.

2. The preceding description is based in part on the legal description and in part on Exhibits 1 and 2 to the affidavit of Wayne Neumann, Missouri City's Director of Planning. The legal description defining the 1960 annexation area does not use meets and bounds, but refers to boundaries of earlier surveys, boundaries of 1960 county commissioner precincts, various bodies of water, and county lines. Also, instead of plotting a center-line and stating the strip was to extend on either side of the line, the surveyor plotted a line, then repeated the original calls, essentially setting them 100 feet to the inside of the original calls. In doing so, however, the surveyor omitted twelve calls defining the path around the south of Manvel. As Neumann's exhibits show, however, it is possible to supply the necessary calls and describe the annexed strip.

Texas Local Government Code section 42.041 by extending its territory into Alvin's ETJ without Alvin's consent.[3] The State also alleged Missouri City violated section 43.0545 by annexing land located within Missouri City's extraterritorial jurisdiction only by virtue of the fact the land was contiguous to municipal territory less than 1000 feet wide at its narrowest point.[4] The State alleged discovery was to be conducted under Level Two.[5]

Missouri City answered, alleging Alvin's 1960 annexation was void because of defects in the legal description, and therefore

3. Section 42.041 provides:

(a) A municipality may not be incorporated in the extraterritorial jurisdiction of an existing municipality unless the governing body of the existing municipality gives its written consent by ordinance or resolution.

(b) If the governing body of the existing municipality refuses to give its consent, a majority of the qualified voters of the area of the proposed municipality and the owners of at least 50 percent of the land in the proposed municipality may petition the governing body to annex the area. If the governing body fails or refuses to annex the area within six months after the date it receives the petition, that failure or refusal constitutes the governing body's consent to the incorporation of the proposed municipality.

(c) The consent to the incorporation of the proposed municipality is only an authorization to initiate incorporation proceedings as provided by law.

(d) If the consent to initiate incorporation proceedings is obtained, the incorporation must be initiated within six months after the date of the consent and must be finally completed within 18 months after the date of the consent. Failure to comply with either time requirement terminates the consent.

(e) This section applies only to the proposed municipality's area located in the extraterritorial jurisdiction of the existing municipality.

TEX. LOC. GOV'T CODE ANN. § 42.041 (Vernon 1999).

4. Section 43.0545 provides:

(a) A municipality may not annex an area that is located in the extraterritorial jurisdiction of the municipality only because the area is contiguous to municipal territory that is less than 1,000 feet in width at its narrowest point.

(b) A municipality may not annex an area that is located in the extraterritorial jurisdiction of the municipality only because the area is contiguous to municipal territory that:

(1) was annexed before September 1, 1999; and

(2) was in the extraterritorial jurisdiction of the municipality at the time of annexation only because the territory was contiguous to municipal territory that was less than 1,000 feet in width at its narrowest point.

(c) Subsections (a) and (b) do not apply to an area:

(1) completely surrounded by incorporated territory of one or more municipalities;

(2) for which the owners of the area have requested annexation by the municipality;

(3) that is owned by the municipality; or

(4) that is the subject of an industrial district contract under Section 42.044.

(d) Subsection (b) does not apply if the minimum width of the narrow territory described by Subsection (b)(2), following subsequent annexation, is no longer less than 1,000 feet in width at its narrowest point.

(e) For purposes of this section, roads, highways, rivers, lakes, or other bodies of water are not included in computing the 1,000–foot distance unless the area being annexed includes land in addition to a road, highway, river, lake, or other body of water.

TEX. LOC. GOV'T CODE ANN. § 43.0545 (Vernon Supp.2003).

5. Texas Rule of Civil Procedure 190.3, which applies to Level 2 discovery, provides in part:

.... All discovery must be conducted during the discovery period, which begins when suit is filed and continues until:

....

... the earlier of

(i) 30 days before the date set for trial, or

(ii) nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery.

TEX.R. CIV. P. 190.3(b)(1)(B).

Alvin had no extraterritorial jurisdiction over land surrounding the 1960 annexation. Missouri City also asserted a general denial and defenses of waiver and estoppel.

In November 2002, Alvin filed a petition in intervention naming only the City of Missouri City as a defendant and requesting declaratory relief. In addition to the allegations set forth by the State, Alvin responded to Missouri City's allegation the 1960 annexation was void. Alvin asserted (1) it had provided various municipal services to the annexed area, thereby creating an irrebuttable and uncontestable presumption of validity under Local Government Code section 41.003; [6] (2) the annexation was validly effected in 1960, reaffirmed when Alvin was incorporated as a home rule city in 1963, and both the annexation and incorporation have been validated by eight subsequent validation statutes; and (3) statutes of limitation or laches bar Missouri City's challenge.[7] Alvin included a prayer for attorney's fees.

Missouri City responded to Alvin's intervention with a general denial. It also al-

6. Local Government Code section 41.003 provides:
(a) The governing body of a municipality may adopt an ordinance to declare an area that is adjacent to the municipality and that meets the requirements of Subsection (b) to be a part of the municipality. The adoption of the ordinance creates an irrebuttable presumption that the area is a part of the municipality for all purposes. The presumption may not be contested for any cause after the effective date of the ordinance.
(b) An area qualifies for inclusion in a municipality under this section only if, on the date of the adoption of the ordinance:
(1) the records of the municipality indicate that the area has been a part of the municipality for at least the preceding 20 years;
(2) the municipality has provided municipal services, including police protection, to the area and has otherwise treated the area as a part of the municipality during the preceding 20 years;
(3) there has not been a final judicial determination during the preceding 20 years that the area is outside the boundaries of the municipality; and
(4) there is no pending lawsuit that challenges the inclusion of the area as part of the municipality.
(c) The date on which an area that is made a part of a municipality under this section is considered to be a part of the municipality is retroactive to the date on which the municipality began its continuous treatment of the area as part of the municipality. That date shall be used for all relevant purposes, including a determination of whether territory allegedly annexed by the municipality was adjacent to the municipality at the time of the purported annexation.
TEX. LOC. GOV'T CODE ANN. § 41.003 (Vernon 1999).

7. Alvin cited two statutes of limitation: TEX. LOC. GOV'T CODE ANN. §§ 43.901, 51.003 (Vernon Supp.2003). Section 43.901 provides:
A municipal ordinance defining boundaries of or annexing area to a municipality is conclusively presumed to have been adopted with the consent of all appropriate persons, except another municipality, if:
(1) two years have expired after the date of the adoption of the ordinance; and
(2) an action to annul or review the adoption of the ordinance has not been initiated in that two-year period.
TEX. LOC. GOV'T CODE ANN. § 43.901 (Vernon Supp.2003).
Section 51.003 provides in part:
(a) A governmental act or proceeding of a municipality is conclusively presumed, as of the date it occurred, to be valid and to have occurred in accordance with all applicable statutes and ordinances if:
(1) the third anniversary of the effective date of the act or proceeding has expired; and
(2) a lawsuit to annul or invalidate the act or proceeding has not been filed on or before that third anniversary.
(b) This section does not apply to:
(1) an act or proceeding that was void at the time it occurred....
TEX. LOC. GOV'T CODE ANN. § 51.003(a), (b)(1) (Vernon Supp.2003).

leged a defect of parties, asserting that quo warranto was the only means of challenging the annexation, and Alvin could not maintain the action on its own.

In January 2003, appellees filed a motion for summary judgment. They alleged Missouri City's attempted annexation violated Texas law in three respects: (1) Missouri City could not lawfully annex into Alvin's territorial limits; (2) Missouri City could not lawfully annex into Alvin's ETJ; and (3) Missouri City could not annex from a strip less than 1000 feet wide at its narrowest point.

Missouri City immediately moved for a continuance and requested a docket control order. It claimed it had outstanding discovery requests due in February, still needed to conduct two oral depositions, and had not had adequate time to review the production responses or conduct adequate discovery. The motion was neither verified nor accompanied by a supporting affidavit.

In its subsequent response to the motion for summary judgment, Missouri City contended that the following four sets of material fact issues precluded summary judgment, and more might be developed with additional discovery: (1) those related to deficiencies in the legal description of Alvin's 1960 annexation; (2) those related to Alvin's failure to include the annexation on maps prepared since 1960; (3) those related to the annexation's having controlling adjacency with Manvel, rather than Alvin; and (4) those related to the reasons for Missouri City's 2002 annexation. Missouri City also alleged Alvin could not rely on the validating statutes or on the Local Government Code sections it cited. Finally, Missouri City alleged the motion for summary judgment was premature because sufficient time for discovery had not elapsed. Attached to Missouri City's response was the affidavit of Mark Watler,

one of Missouri City's attorneys of record. Watler stated his December 10, 2002 review of documents "required follow-up in certain respects." Watler also referred to outstanding discovery requests, copies of which were attached to the affidavit.

Appellees opposed the motion for continuance, arguing in part that the dispositive issues were questions of law, which required no further discovery. They argued that granting the motion would create economic risk for Alvin and Brazoria County. They also referred to the lack of verification or affidavit.

Without stating the grounds, the trial court granted appellees' summary judgment motion and declared the Missouri City annexation ordinance null and void. The court further awarded appellees' attorney's fees in an amount to be determined by separate order, absent agreement by the parties. The style of the order does not include the mayor or council members; the order does not contain a clause purporting to dispose of all parties and all claims. The City of Missouri City filed a notice of appeal, naming only itself as appellant.

Alvin and the State then filed a request to quantify attorney's fees. In turn, Missouri City filed a motion to strike Alvin's intervention, arguing Alvin could not bring the suit in its own name and its suit was duplicative of the State's quo warranto suit. Missouri City requested the court delete from its summary judgment order any relief granted to Alvin. Missouri City separately opposed the request to quantify attorney's fees, arguing (1) the award was not "just and equitable," (2) the "costs" permissible in a quo warranto action do not include attorney's fees, (3) an award of fees is not reasonable because the services were "unnecessarily duplicative," and (4) awarding fees to an elected public official and public employees violates public policy.

Missouri City also filed an amended original answer in which the mayor and council members claimed sovereign immunity. Finally, the mayor and council members filed a "no evidence" summary judgment motion, alleging the State sought no relief from the individuals and Alvin did not name the individuals as parties.

The court entered an order denying the no-evidence summary judgment motion and an order awarding the following attorney's fees to Alvin: $35,000 with remittitur of $5,000 if no appeal were prosecuted and $5,000 if an appeal were prosecuted, but no petition for review sought.[8] The trial court subsequently rendered a "final judgment" incorporating the previous orders (1) granting summary judgment in favor of the State and Alvin, and (2) awarding attorney's fees to Alvin.[9] In the final judgment, the court also stated the relief granted to the State of Texas against the City of Missouri City is granted against the mayor and the council members in their official capacities. Finally the court stated, "This is a Final Judgment disposing of all claims and all parties."

## DISCUSSION

### *Issue One: No Final Judgment*

In issue one, Missouri City initially argued this court had no jurisdiction because the trial court had not rendered a final judgment disposing of all parties and all

claims. The same day Missouri City submitted its brief to this court, the trial court signed the "final judgment" described above, disposing of all claims and parties. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192 (Tex.2001) (stating, in cases in which only one final and appealable judgment can be rendered, a judgment issued without conventional trial is final for purposes of appeal if and only if it actually disposes of all claims and parties then before the court). The parties agree this judgment is appealable and issue one is moot.

Accordingly, we overrule issue one.

### *Issue Two: Premature Grant of Appellees' Motion for Summary Judgment*

In issue two, Missouri City argues the trial court erred in granting summary judgment before allowing a reasonable time in which to conduct discovery. The determination to allow Missouri City more time for discovery was within the trial court's discretion. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996). As discussed below under issues three through six, the trial court had before it all the relevant information on at least one of the summary judgment grounds when it granted appellees' summary judgment motion. Accordingly, we hold Missouri City has not shown an abuse of discretion. *See id.*

We overrule issue two.

---

8. The attorney's fees bear post-judgment interest at the rate of ten percent per year.

9. In the "Final Judgment," rendered July 15, 2003, the trial court ordered, "The City of Missouri City, Texas shall pay to the City of Alvin, Texas attorney's fees in the sum of $35,000...." The request to quantify attorney's fees, however, was filed jointly by the State and Alvin. In its January 29, 2003 order granting declaratory judgment, the trial court ordered "that by the State of Texas on relation of the City of Alvin, Texas and by the

City of Alvin, Texas shall be awarded their reasonable and necessary attorney's fees...." In its May 9, 2003 order awarding attorney's fees and costs, the trial court stated, "[A]fter having considered the affidavits submitted by the parties regarding the attorney's fees and costs incurred by the State of Texas on Relation of the City of Alvin, Texas and the City of Alvin, Texas, the Court finds and hereby Orders that the City of Missouri City, Texas shall pay to the City of Alvin, Texas, attorney's fees in the sum of $35,000...."

*Issues Three through Six: Error to Grant the Summary Judgment Motion on the Merits*

**Overview and summary judgment standards.** In issues three through six, Missouri City challenges the merits of the motion for summary judgment. In issue three, Missouri City argues the trial court erred in granting summary judgment because the record established genuine fact issues about what land was included in Alvin's 1960 annexation; in issue four, because the validation statutes cannot validate annexation of land with no definite boundaries and lacking controlling adjacency with Alvin; in issue five, because the record contained evidence supporting Missouri City's defenses of waiver and estoppel; and in issue six, because Missouri City rebutted the theory its annexation violated Local Government Code section 43.0545.[10]

In their motion for summary judgment, appellees set forth three grounds: (1) Missouri City cannot lawfully annex into Alvin's territorial limits; (2) Missouri City cannot lawfully annex into Alvin's ETJ; and (3) Missouri City's annexation from a strip less than 1000 feet wide at its narrowest point violates section 43.0545. The first two grounds rested on the validity of Alvin's 1960 annexation of the 100–foot–wide strip; the third did not.

In its response to the motion for summary judgment, Missouri City alleged fact issues existed in four areas, three of which related only to the first two grounds: (1) deficiencies in the legal description of the

1960 annexation that rendered subsequent validating statutes inapplicable; (2) Alvin's alleged "abandonment" of the strip, which purportedly supported Missouri City's defenses of waiver and estoppel; and (3) the strip's controlling adjacency with Manvel. Only the fourth area, concerning the reasons for Missouri City's 2002 annexation, related to the third ground for summary judgment, *i.e.*, Missouri City's violation of Local Government section 43.0545.[11] Similarly, on appeal, only issue six relates to the third ground for summary judgment. Because we conclude the third ground was sufficient to support the grant of summary judgment, we overrule issue six and uphold the summary judgment in favor of appellees. Given our resolution of issue six, we do not address issues three through five.

■ The purpose of summary judgment is to eliminate patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 535 (Tex.App.-Houston [14th Dist.] 1997, no writ). The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*,

---

10.  See note 4, above.

11.  The fact issues Missouri City listed as "remaining for discovery," also related only to the first two grounds for summary judgment: whether Alvin consistently taxed the area and provided municipal services; the existence of discrepancies in the legal description; information from other municipalities regarding

waiver and estoppel; gaps in the documents Alvin had already produced; an alleged 1993 disannexation; a 1996 dispute with Pearland; activity in the twenty-year period before the 1960 annexation; failure to show the strip on city maps; and procedural irregularities in the 1960 annexation.

690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Id.* at 549.

Because the propriety of summary judgment is a question of law, we review the trial court's decision de novo. *Brown v. Blum,* 9 S.W.3d 840, 844–45 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.). Similarly, matters of statutory construction are generally legal questions, subject to de novo review. *See State ex rel. Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002).

If, as here, the trial court grants a motion for summary judgment without stating the grounds on which it relied, we must affirm the summary judgment if any ground argued in the motion was sufficient. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Blan v. Ali,* 7 S.W.3d 741, 747–48 (Tex.App.-Houston [14th Dist.] 1999, no pet.). We turn now to issue six, which addresses the third ground of appellees' summary judgment motion.

**Issue Six: Whether Missouri City's annexation violated Texas Local Government Code section 43.0545.** A city may annex only territory that is within its ETJ, unless it owns the area it seeks to annex. TEX. LOC. GOV'T CODE ANN. § 43.051 (Vernon 1999). Missouri City does not claim to own the L-shaped strip of land at issue. Missouri City's own exhibit shows the L-shaped strip lies within Missouri City's ETJ solely because the L-shaped strip touches a strip of Missouri City's municipal territory which is only twenty-five feet wide.

Section 43.0545 provides in relevant part: "A municipality may not annex an area that is located in the extraterritorial jurisdiction of the municipality only *because the area is contiguous to municipal territory that is less than 1,000 feet in width at its narrowest point.*" TEX. LOC. GOV'T CODE ANN. § 43.0545(a) (Vernon Supp.2003) (emphasis added). Missouri City argues the italicized phrase modifies the verb "annex." It directs this court's attention to the affidavit of its planning director, who stated Missouri City did not annex the land only because it was "contiguous to municipal territory that is less than 1,000 feet in width at its narrowest point." Instead, according to the planning director, "the land was annexed as a result of a carefully made public policy decision in which Missouri City identified that it had the greatest government interest in the area in question, and in the surrounding development." Missouri City argues that, because its reason for the annexation was not prohibited, it did not violate section 43.0545.

In contrast, appellees contend the italicized phrase modifies the verb "is located." They argue because the attempted annexation extends from a strip of land that is twenty-five feet wide at its narrowest point, the annexation violates section 43.0545.

A court's objective in construing a statute is to determine and give effect to the legislature's intent. *Tex–Air Helicopters, Inc. v. Galveston County Appraisal Review Bd.,* 76 S.W.3d 575, 581 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). We presume the legislature intended the plain meaning of the words it used. *Id.* If possible, we must ascertain the legislature's intent from the language of the statute and not resort to extraneous matters for an intent not stated in the statute. *Id.* When interpreting a statute, we consider

the entire act, its nature and object, and the consequence that would follow from each construction. *Id.* We must reject any statutory interpretation that defeats the legislative purpose. *Id.* In interpreting section 43.0545 of the Local Government Code, we may look to the Code Construction Act for assistance. *See* Tex. Loc. Gov't Code Ann. § 1.002 (Vernon 1999) (stating Code Construction Act applies to construction of each provision of the Local Government Code, except as otherwise expressly provided); Tex. Gov't Code Ann. § 311.002 (Vernon 1998) (stating chapter applies to each code enacted by 60th or subsequent legislature as part of state's continuing statutory revision program and applies to amendment of such codes).

Under the Code Construction Act, even when a statute is not ambiguous on its face, we may consider other factors to determine the Legislature's intent—factors including, but not limited to (1) the object sought to be obtained; (2) the circumstances of the statute's enactment; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; and (5) the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023(1)-(5) (Vernon 1998); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). Additionally, we consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co.,* 47 S.W.3d at 493; *Battaglia v. Alexander,* 93 S.W.3d 132, 146 (Tex.App.-Houston [14th Dist.] 2002, pet. granted). We must presume the Legislature intends an entire statute to be effective and that a just and reasonable result is intended. *See* Tex. Gov't Code Ann. § 311.021(2),(3) (Vernon 1998); *Battaglia,* 93 S.W.3d at 146.

We must determine whether the italicized phrase modifies "annex" or "is located." Under the interpretive doctrine of last antecedent, unless a contrary intention appears, "qualifying words, phrases, and clauses are to be applied to the immediately preceding words or phrase. Such words, phrases, and clauses are not to be construed as extending to or modifying others which are more remote...." 82 C.J.S. Statutes § 333 (1953) (footnotes omitted). Applying this doctrine, the italicized phrased modifies "is located," not "annex." Nevertheless, the doctrine of last antecedent is "merely an aid to construction to be used in ascertaining the legislative intent." *Id.* (footnote omitted). The doctrine does not apply when "there is something in the subject matter or dominant purpose of the statute that requires a different interpretation." *Id.* (footnote omitted).

Section 43.0545 originated as part of 1999 Senate Bill 89. Although the language of subsection (a) did not change from introduction through enrollment, the bill analyses differed at various points in the legislative process. The bill analyses for the introduced version, the senate committee report, and enrolled version read as follows: "Prohibits a municipality from annexing an area located in the municipality's extraterritorial jurisdiction if the only reason for annexation is that the area is contiguous to the municipal territory, which is less than 1,000 feet in width at its narrowest point." Senate Comm. on Intergovernmental Relations, Bill Analysis, Tex. S.B. 89, 76th Leg., R.S. (1999) (analyses for introduced version, senate committee report, and enrolled version). These analyses appear to support Missouri City's interpretation of section 43.0545.

The bill analysis for the engrossed version, however, reads: "Prohibits a municipality from annexing an area that is located in the extraterritorial jurisdiction of the municipality only because the area is contiguous to municipal territory that is less

than 1,000 feet in width at its narrowest point." *Id.* (analysis for engrossed version). Finally, the analysis for the house committee report reads: "Prohibits a municipality from annexing an area within its ETJ only because it is contiguous to municipal territory that is less than 1,000 feet wide at its narrowest point." *Id.* (analysis for house committee report). These analyses support the conclusion the clause introduced by "because," is intended to modify "is located."

The latter conclusion is reinforced by the Interim Report of the Senate Interim Committee on Annexation and by questioning during testimony before the Senate Committee on Intergovernmental Relations. In both contexts, one finds concern about misuse of the ETJ created by earlier annexations of narrow strips of land.

The Interim Committee recommended strengthening the definition of territory eligible for annexation. The committee noted Local Government Code section 43.021 required an area be "adjacent to a municipality" to be subject to annexation, but expressed concern that "adjacent to a municipality"

> has been construed to permit cities to annex areas located a considerable distance from the principal area of the city, so long as the area is connected at some point to the city limits. This practice raises public policy questions as to whether using narrow strips to annex remote areas facilitates orderly urban planning, and whether the use of grandfathered strips of less that [sic] 1,000 feet is consistent with the intent of § 43.021.

Senate Interim Comm. on Annexation, Interim Report, 75th Leg. 35 (Sep. 3, 1998) (footnote omitted) (available from the Legislative Reference Library of Texas: www.lrl.state.tx.us).

At the hearing before the Senate Committee on Intergovernmental Relations, Senator Jon Lindsay, co-author of Senate Bill 89, commented "the point that really brings me rather whole-heartedly into this fray" was a city's abuse of the privilege of developing the ETJ by using strips that extended the ETJ twenty or more miles from the "real city." *Hearings on Tex. S.B. 89 Before the Senate Comm. on Intergovernmental Relations,* 76th Leg., R.S. (Mar. 10, 1999) (during testimony of James Bertram). Testifying for the bill, Alan Rendl, President of the Spirit of North Harris County Coalition, expressed concern about municipalities "leapfrogging" non-revenue producing areas to get to higher-valued suburbs, with the resulting creation of pockets of low-income, poor infrastructure communities. *Id.* (testimony of Alan Rendl).

Finally, Missouri City's interpretation of section 43.0545 does not comport with the perceived need to curb unbridled annexation. A city would always have another reason, usually financial, for annexing a particular parcel of land.

■ We conclude the legislature intended section 43.0545 to prohibit exactly the kind of annexation Missouri City attempted here: annexation of land that lies within the municipality's extraterritorial jurisdiction solely by virtue of the fact the land is "contiguous to municipal territory that is less than 1,000 feet in width at its narrowest point." Tex. Loc. Gov't Code Ann. § 43.0545(a) (Vernon Supp.2003).

Accordingly, we overrule issue six and uphold the summary judgment in favor of appellees. Given our resolution of issue six, we do not need to address issues three through five, which relate to the alternative grounds for summary judgment.

### Issue Seven: Denial of Motion to Strike Alvin's Intervention

In issue seven, Missouri City argues the trial court erred when it allowed Alvin to intervene seeking the same relief sought in the quo warranto action and awarded attorney's fees to Alvin. In its motion to strike Alvin's intervention—filed two months after the trial court had granted summary judgment in favor of Alvin and after appellees had filed their request to quantify attorney's fees—Missouri City argued the intervention was improper because (1) quo warranto was the only appropriate action for the relief Alvin sought and (2) the intervention was duplicative of the State's quo warranto action. Almost two weeks later, in its response to the State and Alvin's motion to quantify attorney's fees, Missouri City opposed the award of attorney's fees.[12]

■■■ Texas Rule of Civil Procedure 60 provides, "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX.R. CIV. P. 60. A motion to strike an intervention is addressed to the discretion of the trial court. *Young v. Young*, 693 S.W.2d 696, 698 (Tex. App.-Houston [14th Dist.] 1985, writ dism'd) (citing *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982)). A trial court abuses its discretion in striking the plea in intervention when (1) the intervenor could have brought the same action or any part thereof in its own name, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *See Benson v. Anderson*, 899 S.W.2d 272, 274 (Tex.App.-Houston [14th Dist.] 1995, writ denied) (citing *Guar. Fed. v.*

*Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990)).

■■■ A private challenge to annexation is permitted when the annexation ordinance is void because the municipality exceeded its authority to annex. *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 438 (Tex.1991). Such was Alvin's challenge here. Thus, Alvin could have brought the challenge it its own name. Because Alvin's issues were identical to those in the quo warranto action, the intervention did not complicate the case by an excessive multiplication of issues.

In *City of Bridge City v. State ex rel. City of Port Arthur*, the Beaumont Court of Appeals rejected an argument similar to Missouri City's argument in the present case:

> Appellant agrees that attorney's fees may be recovered in declaratory judgment actions, however appellant contends that the actions taken by the City of Port Arthur was exclusively in quo warranto as opposed to action for declaratory relief. It is clear to us from the record that the action originally brought by Port Arthur was pursuant to sections 37.001–37.011 Civil Practice & Remedies Code. The relief sought by Port Arthur was for declaratory judgment. The trial court found as a matter of law that Port Arthur was entitled to the relief it sought and granted the declaratory judgment. We know of nothing that would prevent appellee, City of Port Arthur, from proceeding in a dual capacity as relator in quo warranto and plaintiff in declaratory judgment. *Patton v. Nicholas*, 269 S.W.2d 482, 484 (Tex.Civ.App.-El Paso 1954), *rev'd in part on [other] grounds*, 154 Tex. 385, 279 S.W.2d 848 (1955); *James v. Perry*,

12. See note 9 above.

208 S.W.2d 145, 146 (Tex.Civ.App.-Austin 1948[,] writ ref'd n.r.e.).

Appellant seems to argue alternatively that this case involves both declaratory judgment for which attorney's fees are recoverable, and quo warranto for which attorney's fees are not recoverable and since Port Arthur did not segregate the proof of charges attributable to each action . . . .

. . .

It is apparent to this Court that appellee Port Arthur's action in quo warranto and for declaratory judgment were so intertwined and interrelated as to defy segregation, and that the trial court did not err in its award of attorney's fees in the sum of $56,089.95 through the entry of judgment in this case.

792 S.W.2d 217, 228 (Tex.App.-Beaumont 1990, writ denied) (citations omitted).

The reasoning and conclusion of the Beaumont court of appeals apply to the present case. We overrule issue seven.

### CONCLUSION

We affirm the judgment of the trial court.